**SOUTHWESTERN INVESTMENT COMPANY, Appellant,**

v.

**Claude D. NEELEY et ux., Appellees.**

**No. 16787.**

Court of Civil Appeals of Texas.

Fort Worth.

March 3, 1967.

Rehearing Denied March 31, 1967.

Clayton & Clayton and Cleo G. Clayton, Jr., Amarillo, for appellant.

Johnson & Browning and William V. Browning, Wichita Falls, for appellees.

## OPINION

LANGDON, Justice.

This is a suit for conversion of household furniture. The plaintiffs sought actual damages in the sum of $5,000.00 and exemplary damages of $50,000.00 against the appellant and Elbert Brumbelow, a dealer in used furniture. The latter was sued as agent of appellant and individually.

The appellees will hereinafter be referred to by name or as plaintiffs and the appellant as defendant or as SIC.

The case was tried to a jury on special issues in answer to which the jury found that: (1) the plaintiffs' account with SIC, secured by the two notes and chattel mortgages, was settled and discharged by the plaintiffs by the payment made by check by plaintiffs and accepted by SIC on March 26, 1963. (2) There was a dispute between plaintiffs and SIC over the amount of the debts owing on March 26, 1963, when plaintiffs made the payment of $837.-01. (3) SIC represented to Elbert Brumbelow that it had a valid mortgage on plaintiffs' furniture on or about November 17, 1964. (4) SIC through its actions, if any, authorized Elbert Brumbelow to repossess plaintiffs' furniture on or about November 17, 1964. (4A) At the time Elbert Brumbelow took possession and control of plaintiffs' furniture he was relying on SIC's chattel mortgage. (5) SIC ratified the actions of Elbert Brumbelow in taking the plaintiffs' furniture on November 17, 1964. (7) On or about November 17, 1964, SIC converted plaintiffs' furniture. (8) The conversion of plaintiffs' furniture was done with malice. (10) $700.00 was the reasonable cash market value of plaintiffs' furniture on or about November 17, 1964. (11) Conditioned on a "yes" answer to special issue No. 8 the jury found that $30,000.00 should be awarded plaintiffs as exemplary damages. In connection with the foregoing special issue the jury was instructed that "exemplary damages" means compensation which may be allowed by the jury in addition to actual damages by way of punishment and as an example for the good of the public, and may also include compensation for inconvenience, reasonable attorney's fees and other losses too remote to be considered under actual damages. (12) SIC made no mistake in arriving at the payoff figure furnished Mrs. Neeley on or about March 26, 1963.

Based upon the verdict of the jury the court entered judgment for plaintiffs in the sum of $700.00 actual damages and $30,000.-00 exemplary damages.

The appellant bases its appeal upon 44 points of error.

We reverse and render.

After the plaintiffs had rested, Brumbelow presented his formal motion to be discharged from the proceedings since Mrs. Neeley had testified that she did not have any complaints against him nor had she any complaints against him at the time of the trial. The Court sustained Brumbelow's motion. Defendant SIC also made a motion to be dismissed and for an instructed verdict on the same grounds as presented by Elbert Brumbelow. The basis of SIC's motion was that if the plaintiffs had no complaint against Elbert Brumbelow, its alleged agent, there would be no basis to impute liability to SIC as principal. That if plaintiffs found nothing wrong with the acts and conduct of its agent, they would have no complaint as against SIC. The court in overruling the latter's motion stated "Mr. Brumbelow wasn't their (SIC's) agent." The attorney for plaintiffs in protesting the court's discharge of Brumbelow from the proceedings stated that in testimony before the court Brumbelow himself had said that he went out there and took the furniture, sold it, and kept the money. The plaintiffs did not appeal from the action of the court in dismissing Brumbelow from the suit.

On April 26, 1962, the plaintiffs obtained a loan from SIC in connection with which

they executed a note in the principal sum of $1,490.16, payable in 24 monthly installments of $62.09 each commencing on June 10, 1962. The note was secured by chattel mortgage, signed by them covering items of household furniture and a car.

The plaintiffs made the payments on the note each month from June, 1962 through February, 1963, both inclusive, a total of 9 payments.

In March of 1963, the plaintiffs decided to consolidate some of their debts. A friend had agreed to lend them the money for this purpose. In order to know how much to borrow Mrs. Neeley called the various companies, including SIC to obtain the amount of the balances owed. She talked to some lady at SIC and requested the amount of the balance due on the two notes (car and furniture). The lady agreed to get the figure. They talked again at which time the lady said the balance was $837.01.

On March 26, 1963, Mrs. Neeley went to the SIC office. She testified that she told the lady she was there to pay off the notes and that according to her figures the amount due should be a little less. She did not offer any explanation other than to say that "enough wasn't taken off for interest or something but we get a less figure." She agreed to pay the $837.-01 and said to the lady, "I'll make it clear to you that I thought it was less than that but I will agree to go ahead and pay that in order to get all of these bills out of the way that we owe." She then wrote the check for $837.01, and wrote on it, "In full of account." Mr. Neely offered no testimony as to a dispute over the amount due. The amount due was readily ascertainable. It was a liquidated amount.

Several days later the Neeleys received the title to the car free and clear of any lien. The $837.01 check indorsed by SIC for deposit was honored and paid. Neither the note nor release of the chattel mortgage covering the furniture was ever received by the plaintiffs.

In May or June of 1963 (after the $837.-01 check was given to SIC) Mrs. Neeley testified she was contacted by phone on two occasions by someone with SIC and was advised that the amount due on the notes had been misfigured and that plaintiffs still owed a balance of $62.09. On each occasion Mrs. Neeley advised the person calling that she had her cancelled check showing the account paid in full and, "we owe you no more money." Neither of the plaintiffs offered any testimony based on facts or figures that they were entitled to credit for another payment of $62.09.

At this point the plaintiffs were on notice that SIC held their note and chattel mortgage and was claiming a balance due of $62.09. Further, that under the chattel mortgage it (SIC) had the right to seize the household furnishings wherever found and to dispose of same with or without notice to them. In spite of this they made no effort to contact SIC to obtain the note or a release of the mortgage or otherwise to settle the matter. Plaintiffs chose to ignore the notice rather than to take necessary steps to protect their interest in the furniture.

Sometime after the loan of April 26, 1962, the plaintiffs, after having resided at several different locations, moved to 4708 Catalina Street in Wichita Falls, Texas, about May of 1964, to a residence they rented from Mr. and Mrs. Sidney K. Lambert at $105.00 per month. Plaintiffs paid the first month's rent when they moved in and later paid $50.00. They made no additional rental payments. Several days after the first of the month when the rent was due Mr. Lambert went to the house on Catalina. "It looked like they had locked up and gone; the yard was growed up * * *." A week or two later Mr. Lambert, having received no word from the plaintiffs, returned to the residence and found the Neeleys were still gone. The household furniture, furnishings and personal effects of the Neeleys were in the house. Mr. Neeley did not notify Lambert that he had to leave town

or was leaving town nor did he otherwise make any arrangements for the rent or the removal of the household furnishings from the residence.

Lambert went to the liquor store Neeley had operated. It was locked. Following some inquiry in the area he learned Neeley was in Strawn, Texas, and called him. Neeley offered the car in payment of the rent and Lambert declined. Neeley advised that he would pay the rent when he received money for property he was selling.

After conversations with SIC and Neeley, Lambert changed the locks on the Catalina Street house. He and his wife were the only persons who had keys to the house and access to it and to the furnishings therein.

Mr. Lambert testified that a house with furniture and stored personal effects was no good to him as a rent house with no rent coming in.

The pertinent evidence in the record regarding the furniture which was left at 4708 Catalina Street by the Neeleys and its subsequent removal by Brumbelow is as follows:

Neeley testified that he left his furniture and car with the Lamberts as security for the rentals owed by him. Lambert denied this stating Neeley offered only the car as security which he refused.

Brumbelow testified that before November 17, 1964, he was contacted by Scott Allred, an employee of SIC. Allred wanted to know if he wanted to buy some furniture. Brumbelow said yes. Allred did not tell him who was selling the furniture. All he wanted to know of Brumbelow was whether or not he wanted to buy it. Brumbelow examined the chattel mortgage securing SIC's loan which was on file in the clerk's office and made a list of the furniture covered by it. He paid SIC by check the $62.09 to clear the lien it claimed against the furniture pursuant to such mortgage. Thereafter on November 17,

1964 Brumbelow, accompanied only by his son, went to 4708 Catalina Street where the furniture was located. There he met Mr. and Mrs. Lambert who had the only keys to the house. It is undisputed that the Lamberts would not relinquish their possession and control of Neeleys' furniture until after Brumbelow had paid to them in cash the $315.00 back rent owed by the Neeleys. Thus before he went to get the furniture Brumbelow had paid the $62.09 to SIC to clear the chattel mortgage he had examined in the clerk's office. Before he was admitted into the house and permitted to load up the furniture he was required to pay the Lamberts. He took only the furniture described in the chattel mortgage and left all of the other effects in the house. The Lamberts retained the key. Brumbelow sold all of the Neeley furniture which he obtained. He retained all of the proceeds. SIC and the Lamberts received only $62.09 and $315.00 respectively which was paid to them by Brumbelow before the latter took the furniture and sold it.

Later at the request of the Lamberts, Brumbelow returned to the house and picked up all of the remainder of the Neeley belongings and stored them. Mrs. Lambert was present at this time with the key to admit him. She retained the key. The Neeleys later paid Brumbelow the storage charges and obtained all of their personal effects.

It is further undisputed that this particular transaction was conducted differently than any prior dealings between SIC and Brumbelow had been handled. In the usual case (in repossessing furniture for SIC) Brumbelow, accompanied by an SIC field man, would pick up the furniture designated and store it for them. SIC would pay him for his services. In this instance he received no remuneration from SIC for any services. Brumbelow took complete possession and control over the furniture by leave of the Lamberts who prior thereto had possession and control to the exclusion of all others, including the Neeleys.

Under this record SIC at no time had possession or control over the furniture.

The Neeleys were not present when the furniture or the personal effects were removed by Brumbelow.

Mrs. Neeley did not know that such items had been removed until she was so advised by letter from Lambert's attorney in December.

Mr. Tom Miller was not an officer but was the branch manager of SIC in the Wichita Falls office. He testified repeatedly that the furniture was not repossessed or taken by this defendant. To the contrary, he gave specific instructions that the furniture not be repossessed or taken. He never talked to the Lamberts or to Brumbelow concerning plaintiffs' furniture. His only information as to disposition of the furniture was that he heard Brumbelow had bought it. In this connection it is recalled that the trial Judge in granting Brumbelow's motion to be discharged and in overruling a similar motion by SIC predicated his action upon his conclusion that Brumbelow was not the agent of SIC. No issues were requested or given to which the jury could have found to the contrary. Miller made the decisions as to when furniture would be repossessed by his office. He instructed his employees to do nothing concerning plaintiffs' furniture and specifically not to pick it up. This testimony is not countered.

Scott Allred testified that this furniture was not repossessed nor subjected to foreclosure of this defendant's lien claim. That the procedure involving plaintiffs' furniture was entirely different from that employed by SIC in repossessing.

Mr. Miller testified as regards the mistake in calculating the "pay off" figure given Mrs. Neeley. He knew of no dispute regarding the amount owed by plaintiffs. He was the only one authorized to settle any dispute arising between SIC and any of its customers.

In our examination of the pleadings, the evidence and the charge, it appears to us that the primary problem with which we are concerned on this appeal is the failure to submit issues requiring the jury to make findings as to specific agents, the acts of such specified agents and the scope of the authority under which they were acting. There is no finding, other than by the court on the issue as to whether Brumbelow was the agent of SIC on the occasions in question. The court said he was not. There is no finding that any other person, for whose acts the defendant may be charged was acting in a capacity or with such authority, at a given time, in the scope of his employment so as to establish liability on the part of SIC on the matters of accord and satisfaction, conversion or ratification.

For example there is no evidence of probative value nor any finding that SIC, acting by and through any specific person, (except some "lady") with the capacity or authority to bind it did "settle and discharge" the debt owed by plaintiffs to SIC for an amount less than was owed. There is no evidence or finding of ratification as to any such action. The evidence is that SIC immediately sought to notify the plaintiffs that $62.09 was still due on the notes. Rule 272, Texas Rules of Civil Procedure, requires the judge to "so frame his charge as to distinctly separate questions of law from questions of fact, and not therein comment on the weight of the evidence, and so as to instruct the jury as to the law arising on the facts, and shall only submit controverted questions of fact." Part 2, page 129.

In 1 Tex.Jur.2d 232, §§ 29 to 37, both inclusive, and authorities cited thereunder the elements of accord and satisfaction as to unliquidated and disputed claims and disputes over liquidated claims, the latter requiring a bona fide dispute, are fully discussed. Unquestionably this case involves a liquidated claim. The amount due could be mathematically ascer-

tained by anyone possessing information as to the number of payments which had been made. Plaintiffs never questioned the accuracy of the amount claimed by SIC or its contention that plaintiffs had been given a double credit for a single payment of $62.09. The jury finding that SIC made no mistake in the settlement figure is without support in the record.

We are in agreement with appellant's contention that submission of Issue No. 1 called upon the jury to make a finding upon a question of law rather than of fact. Issue No. 2 contained one of the elements of accord and satisfaction; however, we are of the opinion that it was error to submit it in the absence of an issue as to whether such dispute, if any, was bona fide or to include such in the same issue.

In 1 Tex.Jur.2d 230, § 31, supra, it is stated that "For a dispute over a liquidated claim to constitute the basis for an accord and satisfaction, the dispute must be bona fide and not a mere denial of liability simulated for the purpose of forcing a settlement or escaping liability in whole or in part. * * *" To the same effect see Buford v. Inge Const. Co., 279 S.W. 513 (Dallas Tex.Civ.App., 1925, no writ hist.); Bergman Produce Co. v. Brown, 156 S.W. 1102 (Amarillo Tex.Civ. App., 1913, no writ hist.) and Turner v. Pugh, 187 S.W.2d 598 (Amarillo Tex.Civ. App., 1945, no writ hist.).

In the case at bar there was no pleading as to a bona fide dispute and no issue submitted thereon.

The case of Hines v. Massachusetts Mut. Life Ins. Co., 174 S.W.2d 94 (Fort Worth Tex.Civ.App., 1943, no writ hist.), involved a check bearing the notation, "note payment in full," which was received and deposited. Thereafter it was discovered that the quoted pay-off figure (the amount of the check) was in error because it did not include interest or attorneys' fees which were owing. The debtor, advised of the mistake, denied further liability in reliance upon the notation on the check. The court held the complaint or protest did not amount to a bona fide dispute as to the amount in controversy.

We see no significance in the finding (Issue No. 3) that SIC represented to Brumbelow that it had a valid mortgage or the finding (Issue 4A) that when Brumbelow took possession and control of plaintiffs' furniture he did so in reliance upon such mortgage. Brumbelow had examined the mortgage which had been placed on record. Based upon his examination and findings he paid SIC the sum of $62.09 to clear its lien. He relied upon the mortgage to this extent. Even then he had one more hurdle to clear and that was to obtain the permission of the Lamberts before he could actually take possession. SIC could not grant him such permission.

Again referring to Rule 272, T.R. C.P., supra, and its application to the issue inquiring as to whether SIC through its actions authorized Brumbelow to repossess the plaintiffs' furniture, we find that by use of the word "repossess" the court has commented upon the weight of the evidence. The issue is not predicated upon any finding that the furniture was repossessed. This fact was highly disputed. The issue as framed presumed such finding. And again with reference to the issues above discussed there are no findings of agency and whether the acts of such agents, if any, were within the scope of their authority.

The finding of the jury (Issue No. 5) that SIC ratified the action of Brumbelow in taking the furniture on November 17, 1964, has no support in the evidence. There is no finding as to what agent, if any, of SIC, with authority to bind it, did or said which would constitute ratification after Brumbelow took the furniture. It was before Brumbelow took the furniture that SIC received the $62.09 and not afterwards. It was Brumbelow who sold the furniture and retained the proceeds. The only money received by SIC or the Lamberts was before Brumbe-

low took the furniture. Thereafter Brumbelow received the proceeds of the sale and money from the Neeleys for storage charges covering the personal effects. Ratification is a doctrine of agency. Where there is no agency and no attempt to act as agent there is nothing to which the doctrine can apply. There is no evidence in this record that Brumbelow held himself out as the agent of SIC in any dealings with the Neeleys or that the latter, in any respect, relied upon any assumed authority exercised by Brumbelow.

■ We have carefully examined the record relating to the points on malice and exemplary damages and find the evidence insufficient to support the findings of the jury and the judgment of the Court.

In describing the effect that information concerning the loss of her furniture had upon her Mrs. Neeley stated that after they lost the store and everything in Wichita Falls, they (plaintiffs) were waiting on money due them for property sold to Texaco, but in the meantime, "we didn't have a thing that we could live on. We were forced to stay with his folks a while * * * and when I found out we had lost our furniture, it seemed like the straw that broke the camel's back; we didn't have anything."

The record reflects that plaintiffs were residing with Mr. Neeley's folks in Strawn and had lost the store long before the alleged conversion. Mrs. Neeley was with her husband's family in Strawn when she signed the note in question. SIC therefore was not responsible for plaintiffs' residing in Strawn or the loss of their store nor did they cause the delay in the Texaco payment.

In this case there is no evidence of any threats, harassment, intimidation or abusive language. There is no evidence of forcibly taking of property as alleged by plaintiffs on the part of anyone. There is no evidence that plaintiffs' neighbors or friends or creditors were informed of the nonperformance of the chattel mortgage contract. There is no evidence of threatening or insulting letters or telephone calls or efforts to blacklist the plaintiffs.

As previously stated, neither a representative of SIC nor either of the plaintiffs were on hand when Brumbelow picked up the furniture. The plaintiffs sustained no "illness or body harm" as alleged due to any conduct of SIC.

■ There is no evidence that SIC was actuated by some evil intent or with such gross negligence and disregard of the rights of the plaintiffs as is deemed equivalent to evil intent. The record contains no evidence as to attorneys' fees, the amount or the reasonableness thereof and should not have been considered as an element of exemplary damages under this record.

The Amarillo Court of Civil Appeals in Security State Bank v. Spinnler, 55 S.W.2d 128 (1932, dism.), in considering a conversion suit, said as regards attorney's fees, " * * * but the law appears to be that, if properly alleged and proved, they (attorney's fees) may be considered by the jury in determining the amount of punitive damages to be awarded."

The Austin Court of Civil Appeals, in Hodges v. Plasky, 300 S.W.2d 955 (1957, Ref., n. r. e.), said: "[1] Of course the jury could not establish by a preponderance of the evidence any element of damage about which the evidence was nonexistent. * * * [2] * * * if the charge authorizes the jury to consider items of damage about which there is no proof then the charge is erroneous and an objection on this ground must be sustained."

"In order to hold a principal or master liable in exemplary damages for the actions of an agent or servant, the plaintiff must produce evidence from which the jury may find that the principal or master authorized the doing of the act and in the manner in which it was done, that the agent or servant who committed the wrong

was unfit and that the principal or master was negligent in employing him, that the agent or servant was employed in a managerial capacity and was acting within the scope of his employment at the time of the commission of the wrongful act, or that subsequently to the commission of the act the employer or a manager of the employer ratified the act." 17 Tex.Jur.2d 340, Damages § 280, and cases cited thereunder.

In Wortham-Carter Pub. Co. v. Littlepage, 223 S.W. 1043, page 1046 (Fort Worth Tex.Civ.App., 1920, no writ hist.), it was said: " 'A willful or wanton act or gross indifference, as used in the definition of malice, means an act done with the specific intention to injure the person that was injured, or an act done with such utter recklessness as to indicate a disregard of consequences.' * * *

"We do not wish to be understood as holding that under no set of circumstances can a corporation be held liable for exemplary damages; what we mean to say is it can be so held only in these cases where the agent who acted with express malice is alleged and shown to be something more than a mere servant, in other words, an alter ego of the corporation, or when the malicious act of the servant is alleged and shown to have been adopted or ratified by the corporation after knowledge of the malice. We take the following apt quotation from International & G. N. Ry. Co. v. Garcia, 70 Tex. [207,] 208, 7 S.W. [802], 804:

" 'Exemplary damages are given as punishment for fraud, malice, gross negligence, or oppression. In the absence of all of these grounds such recovery cannot be legally had. When exemplary damages are claimed, the petition should allege the acts and circumstances constituting the fraud, malice, gross negligence or oppression upon which such claim is predicated, and if there is any evidence to support it the court should instruct the jury as to the law applicable to such claim. The petition contains no allegation of any act, or circumstance, indicating either fraud, malice gross negligence or oppression on the part of appellant. The court gave the jury no instruction as to the law by which they must be governed in awarding such damages, nor was it necessary to do so as there was no allegation nor evidence to support such claim.

" 'Corporations may be guilty of such acts and conduct as will subject them to exemplary damages, but no more than individuals can they be punished for the malicious acts of their agents and employes. To make the master liable in any case, to exemplary damages for the fraud, malice, gross negligence or oppression of the servant, it should be alleged and proved, that the acts of the servant which constitute the fraud, malice, gross negligence or oppression were committed by direction of the master, or that the master has ratified and adopted such acts as his own, or that the master has been guilty of negligence in the selection and employment of the servant whose acts constitute the fraud, malice, gross negligence or oppression complained of.' "

See also Western Union Telegraph Co. v. Schoonmaker, 181 S.W. 263 (El Paso Tex.Civ.App.1916, Ref.); Hamlett v. Coates, 182 S.W. 1144 (Dallas Tex.Civ. App.1915, Ref.); Hays v. H. G. N. R. R. Co., 46 Tex. 272 (1876); and 14 Tex.Jur. 2d 29, § 25 and cited authorities.

In the case of Woodard v. Tatum, 277 S.W.2d 943, 945 (Waco Tex.Civ.App., 1955, no writ hist.), it was held that "exemplary damages are not allowed for the breach of an ordinary contract, or for ordinary conversion of property. However, the breach of a contract or the taking or conversion of property may be accompanied by such wilful acts of violence, malicious or oppressive conduct as would subject the wrongdoer to exemplary damages." See also Phoenix Furniture Co. v. McCracken, 3 S.W.2d 545 (Beaumont Tex.Civ.App., 1928, no writ hist.), and cases cited therein; Bolton v. Stewart, 191 S.W.2d 798

(Fort Worth Tex.Civ.App., 1945); and Pacific Finance Corporation v. Gilkerson, 217 S.W.2d 440 (Beaumont Tex.Civ.App., 1948, Ref. n. r. e.)

The appellant asserts by its points 9, 10, 28, 38 and 46, respectively, that the trial court erred in overruling defendant's motion for judgment non obstante veredicto because (1) there is no jury finding that plaintiffs were acting in "good faith" in their contention that a dispute existed as to the debt owed; (2) there is no finding that the defendant, acting by and through some duly authorized person agreed at any time to accept payment from the plaintiffs of any sum of money less than the amount owed defendant in complete satisfaction and discharge of the debt; (3) the jury finding of malice is not supported by evidence of probative value that the defendant, through any person authorized to act for and on its behalf, did or performed any act consisting of malice, oppression or gross negligence or any other type of conduct which would warrant or sustain recovery on the finding of the jury to such issue; (4) the plaintiffs have judicially condoned and acquiesced in the taking of the furniture by Elbert Brumbelow and his exercise of exclusive ownership, control and possession of such furniture since November 17, 1964; and (5) because there is no evidence of probative value establishing that the defendant exercised any dominion, control or possessory right in the furniture to the exclusion of or in defiance of any rights of plaintiffs in and to the furniture.

Appellant contends that the trial court erred in entering its judgment herein against the defendant on the jury finding of conversion (Issue No. 8) because such "conversion" is not limited to an act of a duly authorized person acting within the scope of his employment for the defendant, SIC. We are in agreement.

In 14 Tex.Jur.2d 5 § 1 and authorities cited thereunder conversion is defined and § 3 of the same text P. 9 sets forth the elements of conversion. In general to establish the allegation of conversion it must be shown that the person charged did unlawfully and wrongfully exercise dominion and control over the property of another to the exclusion of the exercise of the same rights by the owner or some other person entitled to its possession.

The only persons under this record whoever at any time had possession of and exercised any control or dominion over the Neeleys' furniture to the exclusion of the same rights of possession and control by the latter were the Lamberts and Brumbelow in that order. Plaintiffs did not choose to name the Lamberts as defendants. They did name Brumbelow and as stated the court dismissed as to him.

We have concluded that all of the points discussed should be sustained and that on the basis of such holding the judgment should be and the same is accordingly reversed and rendered. Since appellant, in our opinion, was entitled to judgment in any event we deem it unnecessary to discuss its other points.

If we are found to be in error in holding as we do we then hold that the award of actual damages of $700.00 should be decreased by the deduction therefrom of the sum of $315.00 paid to the Lamberts for the benefit of the plaintiffs and that the $30,000.00 exemplary damages is unreasonable. Since the record will not in our opinion support such an award ($30,-000.00) we hold that same was actuated by prejudice, bias, passion or some other improper motive.

The judgment of the trial court is reversed and here rendered, that appellees take nothing by this suit.

Reversed and rendered.