**SOUTHWESTERN INVESTMENT COMPANY, Appellant,**

v.

**Claude D. NEELEY et ux., Appellees.**

**No. 17027.**

Court of Civil Appeals of Texas.

Fort Worth.

June 13, 1969.

Rehearing Denied June 27, 1969.

Supplemental Opinion June 27, 1969.

Clayton & Clayton and Cleo G. Clayton, Jr., Amarillo, for appellant.

Johnson & Browning and William V. Browning, Wichita Falls, for appellees.

OPINION

MASSEY, Chief Justice.

Reference is made to Southwestern Investment Company v. Neeley, 412 S.W.2d 925, in which this court concluded that a prior judgment of the trial court—in the same case—should be reversed and rendered. Reference is also made to the Supreme Court's opinion in the same case, wherein it agreed that the trial court's judgment should be reversed, but directed that there be a retrial; Neeley v. Southwestern Investment Company, 430 S.W.2d 465.

The case is one wherein Claude D. Neeley et ux., as plaintiffs, sued defendant Southwestern Investment Company for conversion of household furniture. On retrial plaintiffs obtained judgment against the defendant, based upon a jury's verdict, for actual damages in the amount of $4,500.00 because of the conversion, plus exemplary damages in the amount of $20,000.00.

Judgment is to be reformed and affirmed on condition of remittitur; otherwise to be reversed and remanded for a new trial.

In the opinion of the Supreme Court (430 S.W.2d 465, 468) it was stated that evidence introduced on the prior trial established accord and satisfaction between plaintiffs and the defendant as a matter of

law. The evidence was substantially the same on the trial from which the instant appeal was taken. Accordingly, our holding is that the evidence established accord and satisfaction as a matter of law. In other words there was a full and complete release by the defendant finance company of any and all mortgagee's interest in the plaintiffs' household furniture when it accepted plaintiffs' check for $837.01 on March 26, 1963. Afterward there was never a time when the defendant had a legitimate claim of any kind against the plaintiffs. Defendant did not have any right under the plaintiffs' mortgage, theretofore in effect.

Despite the fact that there had been accord and satisfaction of the debt the defendant actually believed the contrary, although aware that plaintiffs were contending that the pre-existent indebtedness had been released. The defendant also actually believed that its mortgage persisted as a valid and subsisting lien upon plaintiffs' furniture, as security for its claimed balance of indebtedness of $62.09.

Under what it considered as authority under contractual provisions in the "Note With Chattel Mortgage" executed by the plaintiffs (at time the original lien was placed on their furniture) the defendant constructively entered into possession of plaintiffs' furniture on November 17, 1964, and proceeded to sell it at private sale (under power given in the mortgage instrument) for the sum of $62.09. It made no attempt to obtain more than $62.09 for such of the plaintiffs' property which was indisputably converted. Neither did defendant attempt to obtain $62.09 (plus expenses of "repossession" and sale) by selling only one or two articles rather than all of plaintiffs' furniture.

We speak of $62.09 as the amount for which plaintiffs' furniture was sold. By reference to our opinion on former appeal (at 412 S.W.2d 925, 929) it is to be noted that a Mr. Brumbelow paid this amount of money to the defendant and also paid $315.00 to plaintiffs' landlord, a Mr. Lambert, in exchange for which Lambert unlocked the doors of the premises where the plaintiffs' household furniture was located and admitted Brumbelow and permitted him to remove it. More complete testimony relative thereto, produced on the trial following which the instant appeal was taken, disclosed the fact that the foregoing was arranged by a Mr. Scott Allred, acting as agent for the defendant finance company. Furthermore, the evidence positively reflects the fact that the defendant at all times knew that its lien was first and prior to that of any other person (assumption made that defendant's lien persisted). It is indicated that the landlord, Lambert, and perhaps Allred and/or Brumbelow might have believed that a landlord's lien applied to the furniture, next after that of the defendant. Of course there was no landlord's lien, whether or not there might have been a belief that there was.

██ As a matter of law Brumbelow's payment of the $315.00 to Mr. Lambert, as the landlord, would have been the act of a "volunteer" insofar as the plaintiffs were concerned. The same thing would be true if, by implication, such payment might be attributable to the defendant. Plaintiffs' household furniture was "exempt" under Texas statutory law, enacted in obedience to constitutional mandate. Vernon's Ann. Tex.Civ.St., Art. 3832, "Property exempt to family". As between plaintiffs and whoever paid the $315.00, there would be no entitlement to thereafter claim it of plaintiffs. What we are attempting to make clear to the reader is that the $315.00 which Mr. Brumbelow paid to Mr. Lambert may be entirely disregarded for purposes of this action, and the transaction viewed as one where Brumbelow, upon payment of $62.09 and nothing more, received (at the hands of, and because of arrangements with the defendant finance company) the furniture of the plaintiffs. It is our holding that action attributable to the defendant amounted to a conversion of plaintiffs' furniture as a

matter of law, both in the "repossession" action and in the sale thereof afterward.

If it be that we err in our holding that such conversion was established as a matter of law under undisputed evidence, then we hold that there is ample evidence in the case supporting the jury's finding of conversion against the defendant through authorized action of its agent, Scott Allred, and the jury's finding of subsequent ratification by managerial officials. We furthermore hold that the findings were not contrary to the greater weight and preponderance of the evidence.

In view of the accord and satisfaction between plaintiffs and the defendant any exercise of dominion over plaintiffs' property by the defendant would be a conversion. That would not have been true as applied to the defendant's "repossession" (apart from any subsequent sale) had there been no accord and satisfaction between the parties, and if $62.09 was still due and owing, with plaintiffs' furniture incumbered as security therefor. In such situation hypothesized, however, we would nevertheless be of the opinion that there would have necessarily been a conversion as a matter of law resultant from the sale following "repossession". It would be the conversion by the defendant of plaintiffs' interest in their furniture, over and above the $62.09 claimed by the defendant, as the natural and proximate consequence of the defendant's sale of such property, i. e., in a manner whereby plaintiffs would receive nothing for their interest—though at the very time the defendant actually knew of and acknowledged the fact of its existence (as applied to the value of the furniture over and above the amount the defendant claimed plaintiffs owed).

In other words defendant would be guilty of conversion, as a matter of law,—because of the nature of the sale of plaintiffs' furniture—even had $62.09 continued to be due and owing. Certainly would defendant be guilty of like conversion where there was nothing owing, under the same legal theory; in addition to its guilt of conversion in the "repossession" to be considered as having taken place before the sale, because defendant stood as a "stranger" in relation to plaintiffs' furniture, having absolutely no right therein. Undoubtedly the defendant was liable to the plaintiffs for the actual damages which they sustained.

In our opinion the most material issue in the case is whether the circumstances attendant to the conversion of the plaintiffs' property, as evidenced by the proof in the case, justified and supported the submission of the issue upon the matter of the defendant's malice; and—in view of the jury's finding of the existence of the malice therein inquired about—whether the finding was against the great weight and preponderance of the evidence.

Special Issue No. 6 read as follows: "Do you find from a preponderance of the evidence that the conversion of the Plaintiffs' furniture and personal effects, if you have so found, was done with malice?

"Answer 'Yes' or 'No'.

"ANSWER: Yes.

"In connection with the foregoing special issue, you are instructed that by the term 'malice' as used in this charge, is meant ill-will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act, done intentionally or without just cause or excuse."

We hold that the evidence introduced on trial raised and supported the inquiry of the foregoing special issue and that the "no evidence" point of error should be and is overruled. Likewise, we hold that the jury's affirmative answer to such special issue was not contrary to the great weight and preponderance of the evidence in the case.

The general intent and objective of the defendant finance company, in effecting private sale of plaintiffs' furniture (which defendant believed to constitute security for

a loan balance it erroneously considered as due and owing), *was only to obtain the amount of said loan balance for its own interest*. Indisputably apparent from the evidence is the fact that the defendant could have "cared less" whether the plaintiffs received anything for their interest in the property over and above the $62.09 which the defendant received through sale of the furniture. The evidence would warrant and justify the conclusion on the part of the jury that the sale was caused and/or accomplished in a way and manner evidencing an intent on part of the defendant that plaintiffs, as the supposed mortgagors, should realize absolutely nothing for their acknowledged property interest. Indeed, the evidence would seem to require a jury finding that the manner of sale, and conversion attendant thereto, necessarily involved the defendant's intentional gross indifference to the rights of the plaintiffs, *without cause or excuse, amounting to a willful or wanton act by the defendant done to plaintiffs' injury.*

■ Had the defendant been correct in its belief that the plaintiffs owed $62.09, and furthermore correct in its belief that the furniture was bound as security thereof under the mortgage and subject to private sale in order that the defendant might acquire an amount to satisfy that indebtedness,—defendant would nevertheless be bound to recognize that in connection with such sale its position would be that of constructive trustee for the plaintiffs, as the mortgagors, to the extent of their interest in the property. As such a trustee the defendant would stand in fiduciary relationship with the plaintiffs, burdened by the duties and responsibilities attendant to the trust status. To exercise good faith and fairness with respect to the conduct of and accomplishment of the sale of the property interest of its *cestui que trust* was the basic duty of the defendant even under its mistaken assumption that the plaintiffs owed it $62.09. Disregarding any question of the propriety of the defendant's sale of all of the furniture, rather than items there-

of sufficient to satisfy the indebtedness it deemed as owing, said company would in any event have owed the fiduciary duty to those whom it acknowledged to be its mortgagors to make a sincere effort to obtain full "market value" upon the sale of the mortgaged property. That such is the legal requirement in such a case is obvious when it is noticed that if, after a private sale under a power given in the mortgage, a mortgagor can prove that the property was sold unfairly, or at an under price, he will have shown himself entitled to have the value of property sold taken at its full "market value".

See generally 54 A.L.R.2d, p. 1361, Anno.: "Punitive or exemplary damages for conversion of personalty by one other than chattel mortgagee or conditional seller"; 153 A.L.R. p. 769, Anno.: "Punitive or exemplary damages for wrongful possession or repossession by holder of chattel mortgage or conditional sale contract"; 89 C.J.S. "Trusts" § 142, p. 1027, et seq., "Particular Matters as Giving Rise to Constructive Trust", and § 143, "—Mistake"; Jones on Chattel Mortgages, 5th Ed., p. 903, "Mortgagee's Rights and Remedies", Sec. 708, "What is a reasonable notice to the mortgagor of the time and place of a sale", and p. 905, Sec. 710, "A sale of chattels by a mortgagee without foreclosure proceedings, etc."; Gathright v. Russell, 383 S.W.2d 441 (Tyler, Civ.App., 1964, writ dism.); Block Motor Co. v. Melia, 247 S.W. 666 (Beaumont, Tex.Civ.App., 1923, writ dism.); Lyon v. Wood, 363 S.W.2d 179 (Dallas, Tex.Civ.App., 1962, no writ hist.).

The events giving rise to litigation under examination, antedated the effective date of Texas' adoption, in 1967, of the Uniform Commercial Code—Secured Transactions; V.A.T.S., Vol. 3, on Business and Commerce, The Uniform Commercial Code, p. 183 et seq., Ch. 9, "Secured Transactions; Sales of Accounts, Contract Rights and Chattel Paper", Secs. 9.101 to 9.507, inclusive,—in particular Sec. 9.504, "Secured Party's Right to Dispose of Collateral After

Default; Effect of Disposition", and Sec. 9.507, "Secured Party's Liability for Failure to Comply With This Subchapter".

Prior to the effective date of the Uniform Commercial Code in Texas it was the practice of a substantial number of finance companies dealing with personal property paper, particularly on automobiles, to effect or permit sales of "repossessed" properties in a manner by which the mortgagor would receive nothing for his equity therein. The general practice was to sell the property at private sale (under power given by the mortgage) for the benefit of the mortgagee alone. No effort was expended to protect the mortgagor or to serve his interest. In complete disregard of the trust obligation to respect and protect the mortgagor's property interest the mortgagee usually merely concerned himself with realizing enough to pay his own balance plus, perhaps, his expenses of "repossession" and sale.

The acts or omissions to act on the part of mortgagees, in connection with the fiduciary duty arisen by reason of this type of sale (rather than through resort to the processes of law incident to mortgage foreclosure by court decree, with sale by the sheriff) would in law be treated as having been wrongfully and tortiously done or left undone in full consciousness, and with actual knowledge, of such fiduciary duty. The circumstances create a condition because of which the law converts the mortgagee, as a wrongdoer, into a constructive trustee—in order to get at him to redress wrong or to prevent unjust enrichment.

One member of the court is of the opinion that since the defendant knew—at the very time of its "repossession" of the furniture—that the plaintiffs were claiming that their indebtedness to the defendant stood fully settled and satisfied (i.e., that there had been an accord and satisfaction) the jury would be authorized to find defendant guilty of "malice", under the court's definition, because it proceeded to "repossess" under the "power" given in the mortgage, rather than to file its suit for debt and foreclosure in a proper court, there to seek redress according to the forms and processes of law.

The author of this opinion is not willing to commit himself to the proposition in the paragraph immediately preceding, though reluctant to deny that it is correct. All members of the court are agreed that whether "malice" on the part of the defendant could have properly been found under such theory and proposition, it could have been found by the jury as attributable to defendant's conversion of the plaintiffs' property interest, in dereliction of its fiduciary duty, in its method of conduct or allowance of the sale of the plaintiffs' furniture.

[redacted] Our holding is, therefore, that under the law, and in view of the findings of the jury in its verdict, the trial court properly rendered judgment for exemplary damages.

Under points of error presented by the defendant the contention is made that declarations upon the law pursuant to our disposition on prior appeal established a "law of the case" controlling upon the question of propriety in the award of exemplary damages; that obedience thereto inhibited any award of such by the judgment of the trial court failing which this court would be bound to delete from such judgment any attempted award of that character of damages. See 412 S.W.2d 925, 932, et seq.

[redacted] We overrule such points of error. The "law of the case" has application to questions of law, only, under stated identical factual circumstances common to both the first and second trials of the same case. See 64 Tex.Jur.2d, "Words and Phrases", p. 503, "Law of the case doctrine". Evidence produced on the second trial of the instant case satisfied the tests of propriety of award of exemplary damages which were the subject of our discussion in our former opinion. The evidence on the former trial would in no way control our decision on the evidence presented on the trial from which the instant appeal has been taken.

■ We are of the opinion that the $20,000.00 found by the jury as exemplary damages in the case is not excessive. We have noticed an opinion by Justice Gaines which we deem authoritative. Mayer v. Duke, 72 Tex. 445, 10 S.W. 565, 569 (1889) was a suit wherein plaintiff sought exemplary as well as actual damages arising from seizure of plaintiff's goods under a writ of attachment maliciously sued out. It was stated, viz: "It is also complained that the exemplary damages are excessive. They are large; but it is a gross outrage, wrongfully and maliciously, by process of law, to seize a debtor's property, and break up his business, although he may be unable promptly to meet his obligations. The records of this court show that it is an evil of frequent occurrence. The heavy damages awarded by juries in these cases seem to evince that they are aware that the only way to suppress the practice is to punish the offenders by verdicts for substantial damages. * * *"

■ What Justice Gaines said in Mayer v. Duke, supra, would have full application to the case at bar. Awards of exemplary damages in this character of case should not be made to depend upon any particular schedule constituting a proportionment of the exemplary damages to the actual damages. It is the kind of case where the amount to be awarded would properly be measured by the rule of just punishment, rather than that of fair compensation. Unless the jury's award of exemplary damages in such a case is so large as to indicate that it was the result of passion, prejudice, or corruption, etc.,— rather than an honest attempt to reach an amount to assess as a punishment which, though not so great as to unduly oppress the recipient would neverthless be great enough to cause him and others similarly situated to refrain from future actions of similar character,—it would not be disturbed by judges of either trial or appellate courts. Under such test we see no reason to interfere with the judgment for exemplary damages in the instant case. See also

17 Tex.Jur.2d, p. 255, et seq., "Damages", Sec. 186, "Amount of award", and Sec. 187, "—Ratio to actual damages."

By several points the defendant complains of the fact that the trial court proceeded to try the case when it had not the jurisdiction to do so. Defendant's theory of want of jurisdiction was that the trial court had not first required the plaintiffs to meet their obligations, imposed by the mandate of the Supreme Court, to-wit: the enforcement of the recovery by defendant of the costs which the Supreme Court held it entitled to recover of and from the plaintiffs. These were costs expended and incurred in this Court of Civil Appeals and the Supreme Court, which defendant says was approximately $1,600.00. The defendant filed a Plea in Abatement based upon want of jurisdiction on the foregoing statement. However, the defendant never presented it to the court.

■ We are of the opinion that the trial court had jurisdiction of the cause and was entitled to proceed to try the case and render a judgment therein; that since the defendant did not present its Plea in Abatement to the trial court prior to such trial, the plea was waived as a ground upon which defendant might found points of error. See Street v. Continental Casualty Company, 358 S.W.2d 746 (Fort Worth, Tex.Civ.App., 1962) and Continental Casualty Company v. Street, 364 S.W.2d 184, 188 (Tex.Sup., 1963). Application to the instant case of the principles discussed and upheld by the Supreme Court in Street show that the defendant's complaints are without merit.

By several points of error the defendant asserts that error existed in the action of the trial court overruling the defendant's pleading of limitation, under the two-year limitation statute. V.A.T.S., Art. 5526, "Actions to be commenced in two years." This limitation plea was presented under the theory that upon the first trial the pleadings of the plaintiffs alleged a cause of action for conversion against the defend-

ant because of the action of Mr. Brumbelow as its agent, servant and employee acting within the scope and course of his employment by the defendant; and that subsequently, after more than two years had passed since plaintiffs' cause of action for conversion arose, the plaintiffs' attempt to plead their ultimate cause of action, that upon which trial was conducted, should fail in view of defendant's plea of limitation. Defendant's theory was that plaintiffs' amended pleading was of a case different (because of the action of Mr. Scott Allred as its agent, servant and employee acting within the scope and course of his employment by the defendant, defendant's ratification thereof, etc.) from the case plead in their original pleadings.

■ We overrule the points of error. The amended pleadings under which the last trial was conducted, judgment rendered, and the instant appeal was taken, were *not* wholly based upon an emergent out of a new, distinct or different transaction and occurrence from the cause of action originally plead. Under such circumstances the Legislature has seen fit to expressly provide, by means of statute, that the cause of action thus plead shall not be subject to a plea of limitation. V.A.T.S., Art. 5539b, "Limitations as affecting amended and supplemental pleading."

By several points of error the defendant makes complaint relative to special issues submitted to the jury, and to answers returned thereto.

■ One such special issue was Special Issue No. 1, in which inquiry was made of the jury concerning whether Scott Allred converted the plaintiffs' household goods and personal effects. Any consideration thereof necessarily must take into consideration the special issue submitted upon the contingency of an affirmative answer to said special issue, and the answer thereto by which the jury found that in such conversion Mr. Allred was acting as the agent for the defendant, so that the consequence of the jury's action was to factually establish that the defendant was guilty of having converted the plaintiffs' property. We have heretofore indicated that the state of the evidence was such that the defendant must be held to have been guilty of the conversion of the furniture, etc., of the plaintiffs as a matter of law. For that reason alone would it be proper to overrule the defendant's complaints. However, we also overrule its complaint of impropriety in the language of the submission of Special Issue No. 1.

■ Another special issue is Special Issue No. 4. The inquiry thereof bears upon the ratification on the part of the defendant of the action of Scott Allred in converting the furniture, etc., of the plaintiffs. We have already indicated the fact of our holding, essential or not, that ratification of the conversion in question by the authorized officials of the defendant company was established in the evidence as a matter of law. Therefore the judgment would not necessarily depend upon the return of a jury finding of the fact of such ratification. Nevertheless we also overrule the defendant's complaint of the inquiry made by the special issue.

We have intentionally delayed consideration of the complaints by the defendant incident to the evidence applicable to, and the manner of special issue submission of, the actual damages sustained by the plaintiffs.

A contention of the defendant, apparent in its interrogation of witnesses presented by the plaintiffs, was that only the items listed as security for plaintiffs' loan, as reflected on the original "Note With Chattel Mortgage", had been taken from the Lambert premises by Mr. Brumbelow, or been the subject of sale or purchase. Under the plaintiffs' evidence the jury might have believed, and if asked might have found, that there had been a conversion of property (belonging to the plaintiffs and located upon the Lambert premises) including property not listed, as well as property listed, on the mortgage instrument of

April 26, 1962. However, the evidence was such that the jury, if asked, could with justification have refused to so find. In any event no special issue was submitted to the jury on the question.

Consequently the case is one in which the evidence may be held to have indisputably established that all items listed on the mortgage instrument were converted by the defendant,—but whether or not there was any additional property which was also converted remained an unresolved question of fact. The attorney for the defendant elicited the only evidence upon the matter of value which can be accepted as undisputed to establish (any amount as) the reasonable market value of such of the plaintiffs' furniture which was admittedly taken, to-wit: the furniture listed on the mortgage instrument. Such evidence existed in the testimony of Mr. Brumbelow, wherein he stated that the furniture of the plaintiffs which he bought from the defendant had a reasonable market value in Wichita County—on November 17, 1964—of "between seven and eight hundred dollars".

Beyond such "between seven and eight hundred dollars" figure, the state of the evidence was such that the jury would be vested with the responsibility and authority to determine the extent of the property converted and value of that which was converted. However, the jury never resolved either question. That is so because the special issue jury findings did not resolve the question of the reasonable market value of all the property which the jury could have found to have been converted nor resolve the question of the reasonable market value of the whole of the property which the jury might have found to be the subject of conversion.

Special Issue No. 5 read as follows: "What do you find from a preponderance of the evidence was a reasonable cash market value, as that term is herein defined, of the household goods and personal effects *belonging to Claude D. Neeley and wife,* in Wichita Falls, Wichita County, Texas, on or about November 17, 1964? Answer by stating the amount in dollars and cents, if any or none. (Emphasis supplied.) ANSWER: $5,200.00." (The definition of the term was standard.)

Defendant objected to the issue. Grounds therefor included the contention that should the jury return a finding of a dollar amount it would serve no material purpose under the evidence because such evidence was insufficient to establish that the defendant wrongfully sold or wrongfully took *all* of the plaintiffs' furniture and personal effects; and that the inquiry posed did not limit the jury to a finding as to the market value of such items of furniture, if any, which the evidence establishes as wrongfully sold or wrongfully taken. Points of error brought forward the defendant's complaints of the special issue, evidence, etc.

To be noticed is the fact that the jury, by its answer to Special Issue No. 5, found that the total value of all the property of the plaintiffs in Wichita Falls (on or about the date *when the defendant converted some of it)* was $5,200.00. It appears that the amount so found was predicated upon an answer of the plaintiff husband wherein he testified to a value of all his furniture as within a range, as between $4,500.00 and $5,000.00. In entry of the judgment in the case the trial court awarded judgment for actual damages at $4,500.00 on the theory that—as the minimum amount given testified to by the plaintiff within the range between a "high" and a "low" figure it provided the maximum proper figure for which judgment should be rendered, as necessarily included within the greater amount found by the jury.

Defendant's points of error upon the special issue, and other points related thereto, would be properly sustained. Under the circumstances it would appear that the defendant would be entitled to a judgment which would reverse the judgment of the trial court, and remand the case for another trial. Pursuant to any such new trial the

plaintiffs would again be given the opportunity to introduce proof of, and to obtain jury findings establishing, the reasonable cash market value of such of their property *as the jury might find was in fact converted* through action of the defendant.

Of course a judgment of reversal and remand would not necessarily be the only proper one. Should plaintiffs elect to accept, in satisfaction of the judgment obtained below, an amount equivalent to the total of "actual damages taken at $700.00" (amount proven by the defendant pursuant to cross-examination of Brumbelow), plus "exemplary damages of $20,000.00" as found by the jury, there would be no occasion to reverse a judgment which went no further than to make provision therefor. A consequence of such election by the plaintiffs would be to make a judgment thus amended an errorless judgment, i. e., one as to which the defendant could not show itself entitled to reversal. The defendant would not be entitled to reversal because there would have been a deletion from the judgment of the severable and only portion thereof of which the defendant had just complaint.

Therefore our judgment is one of affirmance on condition of remittitur in the amount of $3,800.00 (as the difference between $4,500.00 as actual damages and the sum of $700.00 which is held to be the maximum undisputed amount of actual damages), with resultant total amount of the judgment in the case the sum of $20,700.00.

It is directed that should plaintiffs, appellees, Claude D. Neeley et ux., file the aforementioned remittitur within fifteen days from date hereof, judgment of the trial court in their behalf will be reformed and affirmed as thereby reduced, with costs assessed against the defendant Southwestern Investment Company; otherwise to be reversed and the cause remanded for another trial, with costs assessed against plaintiffs, Claude D. Neeley et ux.

## SUPPLEMENTAL OPINION

It was indicated in our original opinion in this cause that if appellees would file a remittitur in the sum of $3,800.00 within fifteen days the judgment of the trial court would be affirmed; otherwise the judgment would be reversed and the cause remanded.

Appellant has filed a motion for rehearing in this cause, which motion is overruled as of this date; and appellees having filed in writing such remittitur the judgment of the trial court is reformed by the reduction of the sum of $3,800.00, and, as so reformed, is affirmed, with costs assessed against appellant.

Further motion for rehearing may be filed in this cause within fifteen days after this date.