## THORNTON v. PASCH et al.

No. 6600. Decided July 14, 1943. (139 P. 2d 1002.)

See 17 C. J. S. Contracts, sec. 34; 12 Am. Jur., 518.

314

*Thatcher & Young,* of Ogden, for appellant.
*George H. Lowe,* of Ogden, for respondents.

WADE, Justice.

Plaintiff, Thornton, brought this action to recover damages for breach of contract. On the trial at the close of plaintiff's case, the court took the case from the jury and granted defendants' motion for a nonsuit on the grounds that there was no evidence that a contract had been entered into and that there was no evidence that plaintiff had sustained damages. Plaintiff appeals.

Plaintiff's evidence tended to show the following facts: The defendants were in the roofing business, and plaintiff was a trucker. Early in May, 1942, the defendant Pasch asked plaintiff if he would like to make a bid on the hauling of roofing for about 2,000 defense homes, stating that it would amount to about 100 carloads of 30 tons each. The next day plaintiff went to Pasch's office to make his bid, and at the suggestion of Pasch, he wrote it out on a scratch pad. He gave it to Pasch who said he would take it up with his partner and let him know soon. About a week or ten days later Pasch told plaintiff's wife over the telephone that they had a contract for her husband to sign and asked her to have him come in and sign it as soon as possible. In response to this call plaintiff called at Pasch's office and examined the document which was prepared for his signature. He did not sign it then, but did sign it the next day when Pasch was present, after a short discussion which resulted in some additions. The original was left with

Pasch and plaintiff received a copy, but neither the original or the copy was ever signed by defendants. This document reads as follows:

"May 9, 1942

"A. F. Pasch & Rob't. Rider
"2927 Wash. Blvd.
"Ogden, Utah

"Gentlemen:

"I hereby agree to furnish all labor and equipment necessary to deliver all materials for roofing 2000 defense dwelling units in or near Ogden, Utah and/or Layton, Utah.

"I agree to unload the cars and deliver the material on the roofs of these homes for the sum of $1.25 per ton. You will furnish one helper to place material on roof when so desired.

"I will submit to you a statement for progress payments, semimonthly representing ninety-per cent (90%) of all work performed during the preceding semi-monthly period.

"It is agreed that you will pay me within two days after you receive your semi-monthly payments from the General Contractor.

"Very truly yours,
(signed) "Vern Thornton
"Vern Thornton"

After the document was signed, plaintiff asked Pasch when the work would be ready, and was told about May 26th. Later plaintiff sublet the job to one Louis Arave for 85c per ton, or 40c per ton less than plaintiff was to receive. About May 26th, plaintiff called Pasch on the phone and was told that they had decided to do the hauling themselves. Plaintiff brought this action to recover damages for breach of contract. Defendants by their answer denied the existence of any contract.

We will first consider whether the evidence was sufficient to go to the jury on the question of whether a contract had been entered into. It is clear that the instrument signed by plaintiff was at least an offer to do the work in question in accordance with its terms but before it could become a binding contract the defendants would have to accept the same or assent to its terms. This the

defendants might have done by a written or oral statement to that effect. If the defendants had made such a statement the meaning of which was ambiguous, the interpretation thereof would have been a question of law for the court. Plaintiff does not rely on any such statement, but does rely on a series of acts and circumstances which he claims are a manifestation of defendants' assent to and acceptance of plaintiff's offer. In other words plaintiff attempts to prove acceptance of and assent to his offer by circumstantial evidence.

It is a well recognized rule of law that where a contract is not required to be in writing, mutual assent or the meeting of the minds may be proved by words spoken as well as by acts and conduct. Restatement of the Law of Contracts, Vo. 1, Chap. 3, § 21 says:

"The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct."

17 C. J. S., Contracts, p. 373, § 41a.

"* * * an acceptance need not be express or formal, but may be shown by words, conduct, or acquiescence indicating assent to the proposal or offer."

In *Gordon* v. *Curtis Bros., etc., Co.*, 119 Or. 55, 248 P. 158, 161, the court said:

"An assent to an offer, which is requisite to the formation of an agreement, is an act of the mind, and is either expressed or evidenced by circumstances from which such assent may be inferred."

The question of whether defendants did accept or assent to plaintiff's offer is a question of fact. The evidence being circumstantial, if there was any substantial evidence from which defendants assent or acceptance could be inferred then the case should have been submitted to the jury. The evidence that defendant Pasch asked plaintiff to make him a bid and plaintiff complied by writing it on a scratch pad; that Pasch said he would consult his partner and let plaintiff know the result soon; that there-

after Pasch called plaintiff's wife on the telephone and requested that plaintiff come to his office to sign a contract; that plaintiff responded to this call and went to plaintiff's office where he signed an instrument containing the terms of his offer as drawn by defendants, not in the form of an offer but of an agreement; the statement by Pasch that the work would be ready about May 26th; and the fact that at no time, from the time he called Mrs. Thornton to tell her he had a contract for her husband to sign, to and including the time of the final conversation with plaintiff did the defendants ever say or intimate that the offer had not been accepted or that there was no contract, indicates that the defendants considered the matter to be closed and was sufficient evidence from which defendants' acceptance and assent to plaintiff's offer might reasonably be inferred. This should have been submitted to the jury.

Defendants contend that there was no evidence that plaintiff suffered any damages and therefore the decision must be sustained on that ground. The evidence shows that plaintiff had sub-let this work for 40c per ton less than his offer called for, but defendants argue that there was no evidence of how much materials would be necessary to complete the job, and without such evidence plaintiff must fail. Defendants admitted in their answer "that it would require and is requiring approximately 1,230 tons of roofing material to cover the said 2000 units."

This admission, although not all that could be desired, particularly where positive evidence as to the exact amount was available, was, however, sufficient from which the jury might find that some material was required to do the job and determine the amount of material necessary therefor. The court therefore erred in granting the nonsuit.

The judgment is reversed and the case remanded to the district court for a new trial. Plaintiff is awarded his costs of appeal.

WOLFE, C. J., and McDONOUGH, LARSON, and MOFFAT, JJ., concur.