Claude D. NEELEY et ux., Petitioners,

v.

SOUTHWESTERN INVESTMENT COM-
PANY, Respondent.

No. B–257.

Supreme Court of Texas.

June 12, 1968.

Johnson & Browning, William V. Browning and Kenneth Johnson, Wichita Falls, for petitioners.

Clayton, Kolander, Moser & Templeton, Cleo G. Clayton, Jr., Amarillo, for respondent.

WALKER, Justice.

Our former opinion in this cause is withdrawn and the following is substituted therefor:

We are concerned here with questions of accord and satisfaction and conversion. The suit is for conversion of household furniture and was brought by Claude D. Neeley and wife, Beverly June Neeley, petitioners, against Elbert Brumbelow and Southwestern Investment Company. The trial court granted Brumbelow's motion for an instructed verdict and rendered judgment on the jury verdict in favor of petitioners and against Southwestern Investment Company, respondent, for $700.00 actual damages and $30,000.00 exemplary damages. The Court of Civil Appeals reversed and rendered judgment that petitioners take nothing. 412 S.W.2d 925. We modify the judgment of the Court of Civil Appeals so as to remand the case to the district court for a new trial.

On April 26, 1962, petitioners borrowed $1,200.00 from respondent through its office in Wichita Falls. As evidence of the indebtedness they executed to respondent their note in the principal amount of $1,490.16, bearing interest from maturity and payable in 24 monthly installments of $62.09 each, beginning June 10, 1962. The note was secured by a chattel mortgage on the furniture involved in this suit. About a month later petitioners borrowed an additional $300.00 from respondent, evidencing such indebtedness by their note for $337.80, payable in 12 monthly installments of $28.15 each, beginning July 10, 1962, and secured by a chattel mortgage on an automobile.

All amounts accruing on both notes up to and including the installments due March 10, 1963, were paid. Shortly after that date a friend agreed to loan petitioners the money to consolidate some of their debts. Mrs. Neeley telephoned a number of creditors, including respondent, to ascertain the amounts that would be required to pay the several loans. The records in respondent's office then showed a balance of $807.17 unpaid on the furniture note and a balance of $103.45 unpaid on the automobile note. It later developed that the $807.17 figure was incorrect, but this was not known at the time by either petitioners or by the responsible employees in respondent's Wichita Falls office. The mistake was due to the fact that when petitioners made one of the $62.09 payments on the furniture note, $124.18 was deducted from the previous balance in computing the new balance unpaid as entered on respondent's ledger sheet for the loan. Petitioners had nothing to do with the making of this computation or the entry on the ledger sheet.

When Mrs. Neeley's call was received, the inquiry was referred to Jim Delaney, one of respondent's employees, who was authorized to calculate the amount of rebate to be allowed when a loan was paid before maturity. He determined that the furniture note should be rebated $71.75 and the automobile note $1.86. When these amounts were deducted from the last unpaid balances shown on the two ledger sheets, the aggregate remainder was $837.01. Mrs. Neeley was then advised that $837.01 would be required to liquidate the two loans. This was more than she had estimated, and that night she made certain calculations and concluded that the amount should be less than $837.01. The following day, March 26, 1963, she went to respondent's office and discussed the matter with the employee to whom she had previously talked on the tele-

phone. Mrs. Neeley testified that on this occasion:

"I said, 'well, according to my figures, it should be a little less than that. Either enough wasn't taken off for interest or something, but we get a less figure,' and she had it written out on a piece of paper and showed it to me and said, 'This is the figure that Mister —,' she called his name —and obvious the fellow who had figured it, and I thought a minute and I said, 'Well, I'll go ahead and pay you that amount then.' The understanding was that it was in full."

Mrs. Neeley thereupon gave respondent a check for $837.01 marked "In full of account." The same was accepted and endorsed by respondent for deposit and was honored and paid. Several days later the Neeleys received the certificate of title to their automobile free and clear of all liens, but respondent did not give them the furniture note or a release thereof. Eventually the auditing department in respondent's home office discovered the mistake in the ledger sheet covering the furniture loan and advised the Wichita Falls office. The latter then called on petitioners several times to pay an additional $62.09. On each occasion respondent was advised that petitioners had the cancelled check showing the account paid in full and that no further amount was owing.

Early in 1964 the Neeleys moved the furniture into a house in Wichita Falls which they had rented from one Lambert. In about June or July they went to live with Mr. Neeley's parents in Strawn but left the furniture in the Lambert house. When respondent learned the location of the furniture, one of its field men, Bill Gordon, communicated with Brumbelow. The latter was in the used furniture business. He and his brother were used by respondent regularly in its repossessions. Gordon and Brumbelow went to the house where the furniture was located. Gordon, who had the chattel mortgage or a copy of it in his hand at the time, told Lambert that he wanted to re-

possess the furniture and wanted Brumbelow to look at it. Lambert informed respondent that he would not release the furniture unless the accrued rent owing by petitioners was paid.

About two weeks later Brumbelow was called by respondent's credit manager, Scott Allred. Allred and Brumbelow went to the county clerk's office where Allred checked the chattel mortgage records for other liens and made a list of the furniture covered by respondent's mortgage. They then returned to respondent's office, and Allred gave the list to Brumbelow. According to Brumbelow's testimony, he was told that he could have the furniture if he would pay $62.09 to respondent and the rent owing to Lambert. Brumbelow further testified that he paid the $62.09 to respondent at that time, and that Allred telephoned Lambert and arranged for Brumbelow to pick up the furniture. On the same day, November 17, 1964, Brumbelow went to the house, paid Lambert $315.00, and removed the furniture, which was later sold by Brumbelow through his auction.

In response to the special issues that are relevant here, the jury found: (1) that petitioners' account with respondent evidenced by the two notes and chattel mortgages was settled and discharged by the $837.01 payment on March 26, 1963; (2) that there was a dispute between petitioners and respondent over the amount owing when such payment was made; (3) that on or about November 17, 1964, respondent represented to Brumbelow that it had a valid mortgage on the furniture; (4) that respondent authorized Brumbelow to repossess the furniture; (4-A) that Brumbelow was relying on respondent's mortgage when he took possession of the furniture; (5) that respondent ratified Brumbelow's action in taking the furniture; (7) that respondent converted petitioners' furniture; (8) that the conversion was done with malice; (10) that the market value of the furniture at the time of the conversion was $700.00; and (11) that $30,000.00 should be awarded to petitioners as exemplary damages.

The charge is subject to at least some of the objections pointed out by the Court of Civil Appeals. Special Issues Nos. 1 and 7 are too broad under the facts of this case, and the former required the jury to determine a mixed question of law and fact. This does not necessarily lead to a rendition of judgment in respondent's favor, however, because the answers to such issues will support a judgment for petitioners. The cause should be remanded for a new trial if there is any evidence to support these findings.

■ Although Special Issue No. 2 focuses on settlement of a disputed claim, it is our opinion that the evidence establishes accord and satisfaction as a matter of law on a different theory. Mrs. Neeley spoke of requesting the balance due on the loans in her first telephone conversation, but it is clear from the subsequent conversations and respondent's conduct that both parties understood she wished to ascertain the amount that would be required to liquidate the loans if they were paid prior to maturity. Her inquiry was referred to the employee who was authorized to and did compute the rebate on each loan in accordance with the tables used by respondent for that purpose. When Mrs. Neeley later went to respondent's office, she insisted that "either enough wasn't taken off for interest or something."

■ The notes were payable in monthly installments, provided for interest from maturity, and contained no pre-payment option. It does not appear that respondent had elected to accelerate maturity of either note or even had the right to do so when the $807.17 was paid. We thus have a situation in which the debtor has paid his creditor before the debts were due an amount less than would have been required if the notes were paid in accordance with their terms, and the creditor accepted such payment in full satisfaction of the two claims. It is well settled that payment under these circumstances is sufficient consideration to support the creditor's agreement. Kirchoff v. Voss, 67 Tex. 320, 3 S.W. 548; 1 Am.Jur.

2d Accord and Satisfaction § 42; 1 C.J.S. Accord and Satisfaction § 29; Annotation, 24 A.L.R. 1474. In this instance respondent made a mistake in determining the amount it would accept, but the mistake was due to an error in its own records and was not known to petitioners. They were simply given a payoff figure and issued their check to respondent marked "In full of account." The check was for the amount respondent offered to accept in full payment of the notes, and the check was accepted and cashed. Accord and satisfaction is thus shown as a matter of law, and in our opinion respondent's unilateral mistake in computing the payoff figure affords no basis for avoiding same. See Trovatten v. Hanson, 175 Minn. 357, 221 N.W. 238. Cf. International Life Ins. Co. v. Stuart, Tex. Civ.App., 201 S.W. 1088 (no writ). If a contrary holding is made in Port Chester Electrical Const. Corp. v. Hartsdale Manor Homes, Inc., 276 App.Div. 1101, 96 N.Y.S. 2d 604, we regard the decision as unsound.

■ Turning now to the conversion question, respondent contends that Brumbelow simply paid the $62.09 claimed to be owing on the note and acted in his own behalf in paying Lambert and taking possession of the furniture. There is testimony to warrant this conclusion, but the jury has found that respondent converted the furniture. We must, therefore, consider only the evidence which, when viewed in its most favorable light, tends to support this finding, and disregard all evidence that would lead to a contrary conclusion.

Brumbelow had previously acted for respondent in taking possession of property on which the latter held a mortgage. He was accompanied by one of respondent's employees when he first inspected petitioners' furniture, and Allred arranged with Lambert for Brumbelow to pick up the furniture. Even more persuasive are two letters written by Miller, the manager of respondent's office in Wichita Falls, after the alleged conversion. In one of them he stated that "it became necessary that we

pay $300.00 to Mrs. Lambert to obtain the collateral and recover our $62.09." The other letter reads, in part, as follows:

"On or about November 17, 1964, it was necessary to repossess this customer's furniture to satisfy our balance of $62.09 which was 7 months past due at the time. In order to gain possession of this furniture, it was necessary to pay the landlord $300.00 storage or back rent. On June 14, 1963, and again on December 20, 1963, the customer promised to pay our balance. This certainly indicates that he was aware that his account was not paid in full, but rather that by promising payment on these occasions, he recognized that he owed the balance. When he abandoned the furniture the landlord authorized us to repossess."

■ In our opinion the evidence will support a finding that Brumbelow was acting as respondent's agent in taking possession of the furniture. The judgment of the trial court in petitioners' favor cannot be affirmed on that theory, however, because the issue of agency was not submitted to the jury. We have only the finding that respondent converted the furniture, and this form of submission was improper in the present case for the reason pointed out above. Special Issue No. 4, which inquired whether respondent authorized Brumbelow to repossess, might have been answered in the affirmative if the jury concluded that respondent, while not making Brumbelow its agent, simply consented for him to take the furniture.

Petitioners testified that they had no complaints against Brumbelow. Respondent says that since Brumbelow has thus been exonerated, there is no basis for recovery against it under the doctrine of respondeat superior. We do not agree. Petitioners could proceed against the principal even though they elected not to seek damages from the agent. We do not regard their testimony as a judicial admission that Brumbelow was guilty of no legal wrong in removing and selling the furniture.

■ The judgment on the merits in favor of Brumbelow, which has not been attacked, may now be res judicata of any claim against respondent that is based entirely on Brumbelow's actions and the doctrine of respondeat superior. See Restatement, Second, Agency § 217A; Restatement, Judgments § 99; 30A Am.Jur. Judgments § 430. It is clear, however, that the trial court did not err in failing to render judgment in respondent's favor on that ground. There had been no occasion or opportunity for respondent to raise the defense of res judicata, because the judgment for Brumbelow had not become final. And the Court of Civil Appeals could not properly render judgment on the basis of an affirmative defense which had not been urged in the trial court.

We have considered all of the points of error in the Court of Civil Appeals, and there is none that warrants a rendition of judgment that petitioners take nothing against respondent. The judgment of the intermediate court is accordingly modified so as to:

(1) Sever all claims and causes of action asserted by petitioners against Brumbelow, and affirm the trial court's judgment in so far as it relates to this severed part of the case; and

(2) Reverse the judgment of the trial court in favor of petitioners and against respondent, and remand this part of the case to the district court for a new trial.

The judgment of the Court of Civil Appeals as so modified is affirmed. The parties will have fifteen days from this date within which to file motions for rehearing.