CHARLIE THOMAS COURTESY FORD,
INC., Appellant,

v.

The SID MURRAY AGENCY, Appellee.

No. 861.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 31, 1974.

Rehearing Denied Jan. 23, 1975.

Charles Porter, Jr., Corpus Christi, for appellant.

Bruce D. Viles, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

By this suit on account, the Sid Murray Agency, an insurance agency, sought to recover insurance premium payments and attorney's fees from Charlie Thomas Courtesy Ford, Inc., an automobile dealer. The

dealer interposed three primary defenses: accord and satisfaction, settlement, and statute of limitations. After a non-jury trial, the trial court in its judgment granted to the plaintiff recovery for unpaid premiums, but denied to it recovery for attorney's fees. The defendant has appealed. From that part of the judgment about premiums, the appellant-dealer complains on appeal; from that part about attorney's fees, the appellee-agency complains.

The agency is a limited partnership doing business as an independent insurance agent. The dealer is a corporation dealing in new and used automobiles. Commencing in 1969, when appellant opened a Ford dealership in Sinton, Texas, and continuing after the appellant opened a Ford dealership in Corpus Christi, Texas, appellee provided substantially all of appellant's insurance needs including: workmen's compensation, general liability, dealer's physical damage; umbrella coverage; and various types of employee, money, and security bonds. Each coverage was embodied in a written policy or bond.

The dealer, based on bills received from the agency, had been paying the agency on a monthly estimate of its insurance costs. The agency was responsible for paying the premiums to the companies and was extending credit to the dealer. For a period of several months during the fall and winter of 1971, the agency failed to bill the dealer. The dealer, therefore, made no payments on its account for those months. Thereafter, an employee of the agency discovered the resulting past due balance. A meeting was then arranged to take place at the dealer's office to discuss the arrearage and to bring the account current.

On April 2, 1971, the meeting occurred. These were present: Mike Murray, an agency general partner; Harry Owen, the manager of the agency's fire and casualty department; Charles F. Thomas, the dealer's president; and Jessie Wright, the dealer's office manager. There, Murray presented Thomas with a statement showing the balance due of $11,072.10. After some discussion by the parties, the dealer paid to the agency $7,280.00 by check with "Insurance Premiums Through April" noted on the attached voucher. Thereafter, the check was credited to dealer's account, deposited and paid.

There is a dispute between the parties about the meaning of the statement and the check. The appellant-dealer contends the $11,072.10 statement amount was incorrect and that after negotiation, the parties at the meeting reached a settlement or accord and satisfaction whereby appellant was then to pay $7,280.00 in full satisfaction of the account to April 1, 1971. Appellee-agency asserts that the check payment amounted to nothing more than a partial payment of sums calculated to be owed at the date of the meeting.

After the meeting, appellee discovered that several audits on appellant's policies had not been performed and that the resulting amounts due had not been transferred to appellant's account. Furthermore, several monthly reports had not been forwarded to insurance companies and charged to appellant's account. Upon discovery of the mistake and consequent failure of appellant to make several payments, appellee notified appellant in December 1971 of the corrected balance due and the reasons for the mistake. Appellee thereafter made demand for payment. Appellant refused to pay the amount demanded. Appellee then filed this suit.

The dealer answered this suit with a verified denial of agency's account and with defenses of accord and satisfaction, settlement, and limitations (2 years).

In a supplemental petition the agency specially excepted to the dealer's defenses of accord and satisfaction and settlement on the ground that those defenses are not available in a suit for insurance premiums. The trial court sustained those exceptions. Because of this ruling, the dealer was required to present evidence on those two defenses by bills of exception. After the in-

troduction of all evidence, the agency withdrew its objections urged in its special exceptions. After considering all evidence, including that elicited on the bills of exception, the trial court entered judgment favoring the agency for $19,765.21. In support of its judgment, the trial court filed written findings of fact and conclusions of law. From that judgment the dealer-defendant appeals.

On appeal the appellant complains of the following: the inadmissibility of appellee's documentary evidence in support of its account; the findings and conclusions against the defenses of accord and satisfaction and settlement; rulings against the availability to appellant of those defenses; the methods (bills of exception) required of the appellant to present its evidence on those defenses; the rulings against applying the two-year statute of limitations. The appellee attacks the findings of the amount of attorney's fees and the denial of recovery for those fees. Additionally, the appellee challenges the sufficiency and form of some of the appellant's points of error.

■ About the challenge to appellant's points of error, the appellee's criticisms based upon Rule 418, Texas Rules of Civil Procedure, may have merit. Nevertheless, if we can ascertain from the assignments, statements and arguments in appellant's brief the points intended to be presented, it is our duty to liberally construe the brief and to pass on those points. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943); Lang v. Harwood, 145 S.W.2d 945 (Tex.Civ.App.—Waco 1940, no writ). We can so ascertain the points and we will consider all of appellant's points.

Appellant has brought forward twenty-four points of error numbered I through XXV; there is no point IV. It has, however, summarized the points into categories for purposes of argument as we have set out in the forepart of this opinion. We will use appellant's format, generally, in considering its contentions.

■ We will first consider the appellant's complaint which we here characterize as "inadmissibility of appellee's documents" ground. In that regard, the trial court admitted into evidence Plaintiff's Exhibit # 10, a summary of the account upon which appellee brought suit. A summary of voluminous records may be admitted to aid the trier of facts provided the records made the basis of the summary are admissible. Cooper Petroleum Company v. LaGloria Oil and Gas Company, 436 S.W. 2d 889 (Tex.Sup.1969). There is no controversy here about the summary: there is about the records supporting it.

■ Before further considering the admissibility of the documents, we note that the appellee brought its suit in the form of an open account sworn to in accordance with Rule 185, T.R.C.P. Where suit is brought in this form and is controverted by a verified denial (as appellant has done here), the probative force of the itemized account is destroyed. The plaintiff must then prove every item of its account by competent evidence without the aid of Rule 185. J. E. Earnest & Co. v. Word, 137 Tex. 16, 152 S.W.2d 325 (1941). This the appellee has done.

Appellant's chief complaint here is that the records used to support the summary are all hearsay and thus are not competent evidence on which to base a judgment. Appellee's position is that it has made a proper case under Art. 3737e Vernon's Ann.Civ.St., which deals with business records as evidence and comprises an exception to the hearsay rule. The pertinent parts of that article provide:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. *Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility.*" (Emphasis supplied)

■ To prove the records supporting the summary, the appellee offered the testimony of Mrs. Patricia Eisenhauer, a general partner. She by her testimony demonstrated expertise in insurance matters and familiarity with how the subject records were prepared. She said the premium rates on each policy were taken from the manual printed by and containing rates established by the State Board of Insurance Commissioners. Even though some of the items in the records were not within the personal knowledge of Mrs. Eisenhauer, that fact affected their weight and credibility, not their admissibility. Morgan v. O'Beirne, 429 S.W.2d 569 (Tex.Civ.App.—Dallas 1968, no writ). Her testimony shows also that the records were timely and systematically made in the regular course of business even though the preparation of some of them was delayed.

■ Even if the trial court committed error by admitting the summary, the error was harmless. The only documents necessary to prove the amount of the debt of appellant are the dailies, audits, invoices, journal vouchers 51's (J.V. 51's), and credit memos. These documents were properly admitted pursuant to *Morgan*, supra. Appellant's points V, X, and XVIII are overruled.

Next, we will consider appellant's complaints about its special defenses of accord and satisfaction and settlement. The parties do not dispute these general definitions of those defenses.

■ An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, arising either from contract or tort, something different from what the claimant considers himself entitled to. A satisfaction is the execution or performance of such an agreement. 1 Tex.Jur.2d, Accord and Satisfaction, § 1. Since an accord is a contract, it must be supported by a sufficient consideration. 1 Tex.Jur.2d, Accord and Satisfaction, § 8. The word "settlement" is synonymous with "compromise". 12 Tex.Jur.2r, Compromise and Settlement, § 1. An enforceable agreement of compromise requires an offer of compromise, a meeting of the minds of the parties, and an unconditional acceptance within the time and on the terms offered. A dispute about the amount of the claim is essential. 12 Tex.Jur.2d, Compromise and Settlement, § 5.

■ We interpret appellant's special defense complaints as challenges to the trial court's findings on grounds of legal insufficiency, or "as a matter of law", and factual insufficiency, or "against the great weight", because appellant had the burden of proof on those defenses. See O'Connor, Evidence Points on Appeal, 37 Tex.B.J. 839. In resolving appellant's "as a matter of law" points we consider only the evidence and inferences tending to support the trial court's findings, regardless of contrary evidence and inferences. Red Arrow Freight Lines, Inc. v. Howe, 480

S.W.2d 281 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). See 4 McDonald, Texas Civil Practice § 16.10(b). The "against the great weight" points require us to review and weigh all evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

At this point we note that the trial court made sufficient findings on all the component elements of appellant's special defenses, even though some were designated as conclusions. See Shirey v. Albright, 404 S.W.2d 152 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.).

Because the evidence, as well as the elements, regarding both of these special defenses is so interwoven, we will discuss these defenses together. The parties' primary controversy is about these:

1. Whether there was consideration and mutual assent (agreement) sufficient for an accord and satisfaction.

2. Whether there was a dispute about the amount owed sufficient for a settlement.

Evidence in support of the findings of no consideration, no mutual assent, and no dispute is summarized as follows: Most of appellant's coverages were auditable, which means this: The premiums for these coverages could not be determined accurately at the time the coverages were placed because the amounts of premiums were dependent upon the dealer-appellant's exposure to risk which constantly varied. The variables affecting the risk were these: appellant's payroll, number of employees in various classifications, inventory, and gross receipts. Only after annual audits of appellant's records by the affected insurance companies could the exact earned premiums for the year be determined.

Now we move to the April 2nd meeting and the attendant circumstances before and after. Mr. Murray testified that on the way to the meeting Mr. Owen indicated to Murray that appellant would be due a dividend in three or four months. For public relations and because of the size of the outstanding bill at the time, Murray decided not to ask for the full $11,072.10, the amount Owen calculated to bring the account current. Instead, he asked Owen to subtract the amount of the estimated dividend from the amount due; Owen arrived at a figure of $7,280.00. At the meeting, after an exchange of pleasantries, they handed Thomas the statement for $11,072.-10. Then they explained to Thomas about the estimated dividends and asked for a payment of $7,280.00 instead of the full amount of the statement. Mr. Wright, at Thomas' direction, wrote the check for $7,280.00. On the voucher attached to the check Wright wrote "Insurance Premium Thru April". According to Wright, he wrote those words because it was "just proper nomenclature for identification purposes". Murray said he did not notice the notation. In his deposition, Thomas stated that there was no dispute about the figures presented by the appellee at the meeting. Murray testified that the only purpose of the meeting was to get appellant's account current, not to effect final payment. The figure of $1,180.00 for future monthly payments, as well as the $7,280.00, according to Murray, were merely estimates, because the policies were subject to audit. Thereafter, as we have stated, the appellee discovered the mistake of overlooked audits and lack of transfers to appellant's account.

We hold that the foregoing is enough evidence to support the trial court's findings of no consideration, no mutual assent (no agreement) and no dispute. Appellant has not proved accord and satisfaction as a matter of law for the reasons set out in the following rules of law:

1. A claim is not necessarily discharged by the acceptance by a creditor of a sum less than the amount actually due as a result of oversight on his part or mistake as to the amount of the debt. There is want of consideration for such acceptance. Rhea v.

Smith, 462 S.W.2d 78 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.).

2. There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. Jenkins v. Henry C. Beck Company, 449 S.W.2d 454 (Tex.Sup.1970).

3. There can be no agreement when one party has an intention to make it, but the other has not. McCarty v. Humphrey, 261 S.W. 1015 (Tex.Comm'n App.1924, judgment adopted).

■ Appellant contends Neeley v. Southwestern Investment Company, 430 S.W.2d 465 (Tex.Sup.1968) controls the disposition of our case. In *Neeley,* plaintiffs borrowed money from defendant and gave their installment note. Before maturity of the note the plaintiffs asked for and received a payoff figure. They then paid the payoff amount by check marked "in full payment". Thereafter the creditor tried to collect an additional amount because of its error in calculating the payoff amount. The Supreme Court there held that when a debtor has paid his creditor before the debts were due an amount less than would have been required if the notes were paid in accordance with their terms, and the creditor accepted such payment in full satisfaction of the two claims, under these circumstances there is sufficient consideration and an accord and satisfaction is effected. *Neeley* is distinguishable from our case because there the Supreme Court was faced with a situation where the debt was not yet due. In our case, the debt owed by the appellant was past due. Therefore, the facts which established consideration in *Neeley* do not exist in the present case.

All of which brings us to a consideration of the evidence against the findings of no consideration, no mutual assent and no dispute. This evidence follows in summary form: Murray did say that the statement (on which $11,072.10 appeared) represent-ed "the final figure". Thomas believed that the audits for 1969 and 1970 had been completed and that $7,280.00 was all that appellant owed. The check for that amount contained the notations "Insurance Premiums Thru April" on the attached stub. Thomas had told Wright what to put on the check (the notation) in a loud enough voice for Murray to have heard it.

From the evidence summarized above, both that tending to support and that tending to contradict its findings, the trial court was entitled to infer that:

1. At the April 2nd meeting appellee intended merely to collect what was due at that time after giving credit for the dividends which were expected to accrue in the near future, not to settle a disputed claim.

2. The appellee's intention at the meeting was simply to get appellee's account "current", not to get it paid "in full".

3. The appellee did not intend the $11,072.10 figure as a final statement of account.

4. Because appellant was a valued customer, appellee intended to give appellant credit for anticipated refunds, not to accept a smaller amount as collection for a larger debt.

5. The notation on the check was a vague phrase, not an unmistakable communication of intention to pay the debt "in full".

6. The appellant knew that the figures $1,180.00, $7,280.00, and $11,072.10 were estimates subject to credits, not final amounts to liquidate its account.

After considering the evidence summarized above and the record as a whole, we hold that the evidence and reasonable inferences favorable to the trial court's findings of no consideration, no mutual assent, and no dispute are not so against the great weight and preponderance of the contrary

evidence and reasonable inferences as to make those findings clearly wrong and unjust. See Calvert, "No Evidence" and "Insufficent Evidence" Points of Error, 38 Tex. L.Rev. 361, 368 (1960). Appellant's points I, II, III, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XIX, XX, XXI, and XXII are overruled.

In the next category of points, the appellant raises issues about the trial court's ruling denying the availability to the appellant of the special defenses (accord and satisfaction and settlement). As we have mentioned, the trial court did preclude evidence on these issues during the course of the trial. Appellant, therefore, presented his evidence on bills of exceptions. Even though the trial court did make a conclusion of law that these defenses were not available to the appellant because the suit was for recovery of insurance premiums, the court did consider the appellant's bills of exception evidence and did make findings and conclusions based on that evidence.

Because we have upheld the trial court's findings and conclusions against the appellant about those special defenses, we do not deem it necessary to determine whether those defenses were properly available to the appellant, and we will not do so. The trial court treated them as if they were available to the appellant; so have we. If the trial court had made findings and conclusions favorable to those defenses, then we would be confronted with the question of whether they were available; now we are not.

■ As a consequence of being required to present its special defenses on bills of exception, the appellant complains that the trial court denied the appellant a fair trial, because the court did not conduct the trial in accordance with Rules 262, 265, and 266, T.R.C.P. Those rules provide: (262) the same rules for trials before a jury shall govern trials before a court; (265) the order of proceedings for trials; and (266) who shall have the right to open and close upon an admission. We find

nothing in the record where the appellant ever requested permission to offer additional evidence. Nor do we find in the record that the appellant has indicated any prejudice by the court's method of receiving evidence. If the trial court erred, the error was harmless error that did not amount to such a denial of appellant's rights as was reasonably calculated to cause or probably did cause the rendition of an improper judgment. Rule 434, T.R. C.P. Appellant's point VIII is overruled.

■ We will next discuss appellant's contention that a portion of appellee's claim is barred by the two-year statute of limitations, Art. 5526, V.A.C.S. Suit was filed September 20, 1972. Appellant asserts that the total of the appellee's charges for the period before September 20, 1970 (beginning of the two-year period) is $18,918.00; that it is not liable for at least that amount. The trial court concluded that the applicable period of limitations was four years and that no part of the transactions sued upon was barred by limitations. That conclusion does not state what statute it is based on. We believe, however, that the trial court's conclusion can be upheld on the basis of Art. 5527, V.A.C.S., which allows four years to bring an action for debt where the indebtedness is evidenced by or founded upon any contract in writing. The contracts in writing here, of course, are the insurance policies and the suit for payment of premiums on those policies is governed by Art. 5527, supra. Dennis v. Layer, 103 S.W.2d 440 (Tex.Civ.App.—Galveston 1937, no writ); Ward v. Hanchett, 47 S.W.2d 360 (Tex. Civ.App.—San Antonio 1932, error dism'd, Tex.Com.App., 65 S.W.2d 268). Appellant's points XXIV and XXV are overruled.

■ Finally, we consider appellee's cross-points complaining of the trial court's denial of recovery to appellee of its attorney's fees. Appellee seeks its attorney's fees pursuant to that part of Art. 2226, V. A.C.S., which provides for recovery of reasonable attorney's fees in suits founded

upon a sworn account. Our Supreme Court has held that in order for a claim to be founded "upon a sworn account or accounts" within the meaning of the statute, the account must be one "in which there is a sale upon one side and a purchase upon the other, whereby title to *personal* property passes from one to the other." Van Zandt v. Fort Worth Press, 359 S.W.2d 893, 895 (Tex.Sup.1962); Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, 78 (1958). We hold that this suit for recovery of insurance premiums is not founded on transactions of personal property of the type envisioned by our Supreme Court to be within its definition. This action is founded upon special contract and attorney's fees are not recoverable. *Van Zandt,* supra; *Meaders,* supra; Dolenz v. Employers Casualty Company, 504 S.W.2d 625 (Tex.Civ.App.—Forth Worth 1974, no writ). See Rudi's Automotive Corporation v. Heeth, 509 S.W.2d 428 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); Grace v. Rahlfs, 508 S.W.2d 158 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.). Appellee's first, second, and third cross-points are overruled.

The judgment of the trial court is affirmed.