Robert K. BENCH, Plaintiff
and Appellant,

v.

BECHTEL CIVIL & MINERALS, INC.,
Defendant and Respondent.

No. 880088–CA.

Court of Appeals of Utah.

July 22, 1988.

Gerald E. Nielson (argued), Salt Lake City, for plaintiff and appellant.

James L. Warlaumont, Steven E. Clyde (argued), Clyde & Pratt, Salt Lake City, for defendant and respondent.

Before GREENWOOD, DAVIDSON and BILLINGS, JJ.

OPINION

GREENWOOD, Judge:

Robert K. Bench appeals the trial court's ruling of no cause of action on his complaint against Bechtel Civil and Minerals, Inc. and finding of an accord and satisfaction between the parties. We affirm.

On March 30, 1981, Bench and Bechtel entered into an employment contract which provided that Bench would work for Bechtel in Jubail, Saudi Arabia. The contract stated that Bench would receive a monthly base salary of $2,500 and certain "uplifts" on his base salary, including a foreign service premium of 7.5% of base salary paid monthly, a special area allowance of 7.5% of base salary paid monthly, a hardship premium of 15% of base salary paid monthly and a completion incentive of 17% of total earned base salary after one year of service and 25% on subsequent years. The contract also stated that Bench would receive additional "return to point of origin" benefits after twenty-four months of employment, including accrued vacation, return transportation to the United States, shipment of household effects and allowances for relocation. Bench's assignment, according to the contract, was for an indefinite period and, assuming satisfactory performance, would continue until Bechtel notified him that his services would no longer be required.

Bench began working for Bechtel on May 1, 1981. On December 9, 1981, Bench attended a meeting in which Bechtel explained that it was modifying its compensation plan due to tax law changes caused by Congress's enactment of the Economic Recovery Tax Act. Under the revised plan,

employees would no longer receive the 7.5% foreign service premium or 7.5% special area premium. In addition, the completion incentive would be reduced to 8% for the first year and 15% for the second year. At the meeting, Bechtel also informed employees that if they did not qualify for the foreign service income tax exemption because they had been overseas less than eighteen months, they could choose to be "contract completed" after eighteen months and receive "return to point of origin" benefits.

Shortly after the December 1981 meeting, Bench expressed concern about the changes to his supervisor who advised him to talk with Ray Portlock, the program manager. Bench did not communicate with Portlock until October 1982 when Bench had completed eighteen months of employment and thus qualified for the income tax exemption. At that time, he wrote to Portlock to confirm his options regarding early completion. Portlock agreed Bench could complete his contract early as long as it was after January 1, 1983.

Bench terminated his employment as of January 31, 1983. On January 29, 1983, Bench accepted and negotiated his final check from Bechtel which indicated on the check stub that it was "in settlement of net final wages from job 11967/Jubail." The check included a $2,500 relocation allowance, accrued vacation pay, a completion incentive award and reimbursement for airfare.

In April 1983, Bench wrote to Bechtel demanding "uplifts" due under the original contract for the period of January 1982 to January 1983. When Bechtel failed to pay him, this action was filed.

Prior to trial, the parties stipulated that the court could decide the case based on Bench's deposition, proffers and the pleadings. The trial court reviewed the documents and found that Bechtel informed Bench of the revised compensation plan prior to its effective date. The court also found that although Bench expressed concern about the adjustments, he took no action to collect amounts due under the parties' original contract. Further, the court found that Bench "accepted the new package of benefits and terminated his employment as a result of the adjustments and received benefits which under his original employment he would have been entitled to only upon the completion of twenty-four months of employment." Finally, the court found that Bench accepted and negotiated the final check from Bechtel in settlement of net final wages. The court concluded that Bechtel was not liable to Bench for any amounts claimed due under the original contract because "the acceptance without reservation of the offer and negotiation of the final payment of completion benefits before twenty-four months of employment constitutes an accord and satisfaction."

■ On appeal, we are asked to determine whether the trial court erred in ruling that the parties reached an accord and satisfaction. Because the trial court made its determination based solely upon Bench's deposition, proffers and the pleadings, it had no opportunity to evaluate the credibility of witnesses. Thus, this Court on appellate review has as good an opportunity as the trial court to examine the evidence and may review the facts *de novo*. *Clark Equip. Co. v. Hartford Accident & Indem. Co.*, 227 Kan. 489, 608 P.2d 903, 906 (1980).

■ It is well-established that "[a]n accord and satisfaction arises when the parties to a contract agree that a certain performance offered in substitution of the performance originally agreed upon will discharge the obligation created under the original agreement." *Petersen v. Petersen*, 709 P.2d 372, 374 (Utah 1985). Generally, the elements of a contract must be present in an accord and satisfaction, including proper subject matter, offer and acceptance, competent parties, and consideration, *id.* at 374–75, and the party alleging accord and satisfaction has the burden of proving every necessary element. *United Am. Life Ins. Co. v. Zions First Nat'l Bank*, 641 P.2d 158, 160 (Utah 1982). Further, the parties must clearly intend an accord and satisfaction for it to have effect. *Petersen*, 709 P.2d at 375.

**462**

Bench does not dispute the terms of the revised compensation plan but contends that he did not agree to the plan. It is well-established that "mutual assent or the meeting of the minds may be proved by words spoken as well as by acts and conduct." *Thornton v. Pasch,* 104 Utah 313, 139 P.2d 1002, 1003 (1943). Bench was advised of the revised compensation plan in December 1981, and beginning January 1, 1982, he no longer received the "uplifts" payable under the original contract. Although Bench expressed concern to his supervisor about the changes, he continued to work for Bechtel for another year and did not attempt to collect the "uplifts" he now claims are due under the original contract until this action was filed in April 1983. Moreover, Bench continued to work for Bechtel to complete the required eighteen months overseas to qualify for the foreign service income tax deduction. The eighteen months of employment also qualified him for "return to point of origin" benefits under the new contract, while the original plan required twenty-four months of overseas service. By continuing employment with Bechtel under the terms of the revised compensation plan without taking any action to collect the "uplifts" and without making any oral or written demand for the monies, Bench indicated by his conduct that he accepted Bechtel's revised compensation plan.

In addition to that conduct, upon termination, Bench accepted and negotiated a check from Bechtel which stated it was "in settlement of net final wages from job 11967/Jubail." In *Bennett v. Robinson's Medical Mart, Inc.,* 18 Utah 2d 186, 417 P.2d 761 (1966), the Utah Supreme Court held that cashing a salary check which bore the statement "Payment in full" did not constitute an accord and satisfaction of a separate claim for commission because plaintiff told defendant upon receipt of the check that he disputed whether it was payment in full. Subsequently, in *Marton Remodeling v. Jensen,* 706 P.2d 607, 608 (Utah 1985), the Utah Supreme Court held that plaintiff could not disregard the condition "Endorsement herein constitutes full and final satisfaction" on the check and

that cashing the check constituted an accord and satisfaction. In *Marton,* plaintiff received the check and wrote to defendant refusing to accept the check as payment in full. Plaintiff then cashed the check after writing "not full payment" below the condition. The Court distinguished *Bennett,* stating that unlike *Marton, Bennett* involved two claims, one for salary and one for commissions, and that although cashing the salary check in *Bennett* did not constitute an accord and satisfaction of the claim for commission, the check in *Marton* involved a single claim. Accordingly, the Court held that cashing the check constituted an accord and satisfaction.

In this case, the check stub attached to the check Bench received upon termination stated "in settlement of net final wages from job 11967/Jubail." Unlike *Bennett,* Bench's claim for uplifts was not separate from his salary. Bench had not received the "uplifts" for over a year and, unlike *Bennett,* would not have expected a separate check for the "uplifts." Instead, the present case, like *Marton,* involves a single claim for compensation. Accordingly, we find that Bench could not disregard the condition on the check and, by cashing the check, he effected an accord and satisfaction.

Most importantly, however, because the check included benefits Bench would not have been entitled to under the parties' original contract, Bench's negotiation of the check conclusively establishes Bench's acceptance of the revised compensation plan. Therefore, we hold that Bench's conduct in failing to demand the "uplifts" during the period of January 1, 1982 to January 31, 1983, cashing the check and accepting the benefits under the revised compensation plan constituted an accord and satisfaction.

Affirmed.

DAVIDSON and BILLINGS, JJ., concur.