NEIDERHAUSER BUILDERS AND
DEVELOPMENT CORP., Plaintiff
and Appellant,

v.

Scott G. CAMPBELL and Claudia
Campbell, Defendants and
Appellees.

No. 910419–CA.

Court of Appeals of Utah.

Jan. 21, 1992.

Charles W. Hanna (argued), Smith & Hanna, P.C., Salt Lake City, for plaintiff and appellant.

Randall L. Skeen (argued), Thompson, Hatch, Morton & Skeen, Salt Lake City, W. Jerry Ungricht, Nieder & Ward, Midvale, for defendants and appellees.

Before BILLINGS, GREENWOOD, and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff Neiderhauser Builders and Development Corporation (Neiderhauser) appeals from the trial court's order granting summary judgment for defendants Scott and Claudia Campbell (the Campbells). We affirm in part, and reverse and remand in part.

## FACTS

Because we are reviewing the trial court's order granting the Campbells' summary judgment motion, we state the facts in the light most favorable to Neiderhauser. *Frontier Founds. v. Layton Constr.*, 818 P.2d 1040, 1041 (Utah App.1991).

On July 12, 1988, Neiderhauser and the Campbells entered into a contract wherein Neiderhauser agreed to construct a house for the Campbells for $87,700. The contract documents included a standard form agreement, the bid proposal, and the specifications and drawings. The agreement also provided that Neiderhauser was to submit authorized written change orders for all work not specifically included in the contract.

After the agreement was signed, the parties discovered that applicable building covenants and restrictions required that the house be larger than the parties had originally planned. Consequently, they added a clause to the agreement stating that the additional costs incurred because of the additional footage would be treated as extras and settled at closing.

The Campbells obtained a construction loan from First Security Bank's (FSB) Layton branch. During the course of construction, Neiderhauser submitted draws to FSB and FSB issued checks drawn on the Campbells' construction loan account directly to Neiderhauser. The following language appears on the back of each check:

### Lien Waiver

In consideration of the payment of this check, the payee by endorsing, causing to be endorsed, stamping this check with a deposit stamp, or otherwise negotiating the same, waives[,] releases and relinquishes all right of lein[sic] or claims payee now has to date upon the premises described on the reverse side hereof. The payee certifies that this check is payment for labor and/or materials that were actually performed upon and/or furnished to the described premises. Payee warrants and guarantees under penalty of fraud that payment in full has been made by payee to all laborers and

suppliers of labor and all materials to said premises incurred to date at the instance of payee. Payee agrees to indemnify and to hold harmless the owner and First Security Bank of Utah, N.A. and/or it[s] assigns from any loss, claims or expenses by reason of or arising out of said lien or claim.

Neiderhauser signed the lien waiver on each check.

Neiderhauser submitted its last draw to FSB on December 28, 1988. The draw was for $14,007.80, which exceeded the remaining balance of the loan. The bank paid a portion of the draw and designated checks in the amount of $5,639.33 for the remainder, to be paid at closing out of the Campbells' long-term financing loan, which they obtained from the Bountiful branch of FSB. Prior to closing, employees of the FSB's Layton branch told employees of the Bountiful branch to issue the additional checks and give them to the title company to present to Neiderhauser. The title company, however, never received the checks from the Bountiful branch and therefore never gave them to Neiderhauser.

Neiderhauser prepared a settlement statement entitled "addendum" which set forth the revised price of the house, including $25,000 for the lot, the cost of all extras and overruns, and costs for the additional footage. Although Neiderhauser had not presented any written change orders, the extra costs were incurred at the request, or at least with the concurrence of the Campbells. The Campbells were informed of and agreed that there had been extras included in the home and overruns of cost allowances totaling $12,514, making the total price of the home and lot $125,214, exclusive of financing and appraisal costs. Both Neiderhauser and the Campbells signed the addendum at the closing on December 30, 1988. The settlement statement signed by the parties at closing specified the sum of $10,204.24 to be paid to Neiderhauser as a full payoff. When the parties signed the addendum and the settlement statement, they assumed all of the draws submitted by Neiderhauser had been paid. The bank, however, had not yet paid the extra $5,639.33. Therefore, the settlement statement inaccurately represented the payoff amount owed to Neiderhauser. Based on its assumption that the final draw would be paid in full and that the settlement statement was correct, Neiderhauser accepted a check at closing which was presented as the final payment due and owing for its work.

One week after closing, Neiderhauser received the checks for reimbursement of the final draw it had presented on December 28, 1988. The checks were less than the draw amount by $5,639.33. Neiderhauser then demanded payment from the Campbells. When the Campbells refused to pay, Neiderhauser filed a lien on their house and a complaint alleging breach of contract, lien foreclosure, failure to bond and quantum meruit. The Campbells counterclaimed, alleging that the lien was void, breach of contract, and slander. Neiderhauser then moved for summary judgment on the lien foreclosure. The Campbells also moved for summary judgment, arguing that Neiderhauser had waived its right to file a lien by signing the waivers on the checks.

The trial court denied Neiderhauser's motion for summary judgment and granted the Campbells' motion for summary judgment. The court order addressed only the lien theory. In its written ruling, the trial court stated that because Neiderhauser filed a lien after agreeing to not do so, it violated its agreement and the lien was therefore void. The court later clarified that it intended its ruling to cover all of Neiderhauser's causes of action, even though they were not all addressed in either the parties' memoranda or the court's ruling.

On appeal, Neiderhauser claims the trial court erred in granting summary judgment to the Campbells on the issues of lien waiver, mistake, quantum meruit, and failure to bond. Neiderhauser also argues that the trial court should not have granted summary judgment on the quantum meruit and bonding issue claims because they were neither argued nor briefed before the trial court. The Campbells urge that accord and

satisfaction precludes Neiderhauser's claims entirely.

## STANDARD OF REVIEW

■ Summary judgment shall be granted if "there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). In determining whether the trial court correctly found that there were no genuine issues of material fact, "we view the facts and all reasonable inferences in a light most favorable to the party opposing the motion." *Frontier Founds. v. Layton Constr.*, 818 P.2d 1040, 1041 (Utah App.1991) (citing *Blue Cross and Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989)). We review the trial court's conclusions of law for correctness, *Blue Cross and Blue Shield*, 779 P.2d at 636–37, including its conclusion that there are no material fact issues. *Kitchen v. Cal Gas Co.*, 821 P.2d 458, 460 (Utah App.1991).

## LIEN WAIVER

Neiderhauser claims that, contrary to the trial court's ruling, it was entitled to file and enforce a lien on the Campbells' house. It argues that the parties intended the lien waiver on the back of each check to release lien rights as to the materials and labor for which payment was made by that particular check only.

It is undisputed that Neiderhauser endorsed and signed the lien waiver statement on the back of each check it received. The lien waiver states that by endorsing the check, the payee "releases and relinquishes all right of lein[sic] or claims payee now has to date upon the premises described on the reverse side hereof." The last lien waiver signed by Neiderhauser was dated January 6, 1989, prior to the date it filed the lien. There is no claim of work done or materials supplied after that date.

■ In the absence of fraud or agreement by the parties, an unambiguous waiver of lien rights is binding. *Zions First Nat'l Bank v. Saxton*, 27 Utah 2d 76, 493 P.2d 602, 603 (1972); *Holbrook v. Webster's, Inc.*, 7 Utah 2d 148, 320 P.2d 661, 663 (1958). The waiver of lien rights is effective even if signed in blank, *LeGrand Johnson Constr. Co. v. Kennedy*, 541 P.2d 1038, 1039 (Utah 1975), or if referred-to attachments are not, in fact, attached. *Amfac Distrib. Corp. v. J.B. Contractors*, 146 Ariz. 19, 703 P.2d 566, 571–72 (App. 1985).

■ Neiderhauser does not claim fraud or misrepresentation in its signing of the lien waivers. The lien waivers unambiguously waive all lien rights accrued to date of the waiver. Therefore, we find no error in the trial court's ruling that Neiderhauser waived its right to file a lien on the Campbells' property for all work and materials predating the signed waivers.

## MISTAKE

■ Although Neiderhauser could not pursue its lien foreclosure action, it could still proceed on its claim for money owed, if not otherwise precluded. Utah Code § 38–1–11 (1988); *Harris–Dudley Plumbing Co. v. Professional United World Travel, Inc.*, 592 P.2d 586, 588 (Utah 1979). Neiderhauser argues that a mutual mistake occurred at closing, justifying relief from the terms of the parties' contract as reflected in the closing statement. Neiderhauser asserts that both parties intended that the price of the house include all extras and overruns incurred in construction, and that when each signed the closing agreement they assumed that all those expenses had been included. Neiderhauser claims that since the $5,639.33 was not included in the calculation of the closing statement, a mutual mistake occurred which makes their contract voidable. The Campbells argue that if any mistake occurred, it was unilateral and does not affect the validity of the contract. They claim they are not liable for the additional costs because Neiderhauser did not submit written change orders for the work.

Although the original contract required written change orders, Neiderhauser contends that the parties later agreed to proceed without written authorization because the addendum, which the Campbells signed and thereby agreed to, included charges

which exceeded the $87,700 and were in addition to additional footage costs. All but the disputed $5,639.33 was paid to Neiderhauser without complaint from the Campbells. We accept this version of the facts for the purpose of reviewing the summary judgment. As a result, the original contract was modified by agreement of the parties, as reflected in the addendum and closing statement.

■ "A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Robert Langston, Ltd. v. McQuarrie*, 741 P.2d 554, 557 (Utah App.) *cert. denied*, 765 P.2d 1277 (Utah 1987). A contract that is based on a mutual mistake of fact is voidable and may be rescinded, *id.*; *Tanner v. District Judges*, 649 P.2d 5, 6 (Utah 1982); *Mooney v. G R & Assocs.*, 746 P.2d 1174, 1178 (Utah App. 1987) (citations omitted), or reformed. *Guardian State Bank v. Stangl*, 778 P.2d 1, 4–5 (Utah 1989).

■ In *Stangl*, the Utah Supreme Court criticized court decisions which required mutual mistake in order to provide equitable relief from contracts. *Id.* at 5–6. *Stangl* held that contracts may be rescinded or reformed based upon unilateral mistakes when the nonmistaken party knows of or produced the mistake by "fraud or other inequitable conduct," *id.* at 5; *Thompson v. Smith*, 620 P.2d 520, 523–24 (Utah 1980); *Jensen v. Manila Corp. of the Church of Jesus Christ of Latter-day Saints*, 565 P.2d 63, 64–65 (Utah 1977), or where the contract as written expresses an unintended meaning or creates an uncontemplated right. *Stangl*, 778 P.2d at 6. Courts may provide relief for either a mutual or unilateral mistake when the clear intent of the parties is not effectuated by the agreement. *Id.* (reformation or rescission is available where either a mutual or a unilateral mistake occurred in the memorialization of that agreement, if the contract as written fails to conform to what both parties intended).

■ Under the facts of this case, it cannot be said that Neiderhauser does not have a claim for relief on the basis of mistake. Neiderhauser is entitled to present evidence to show that both parties mistakenly thought the settlement statement was calculated according to correct figures and all intended Neiderhauser to be compensated for the amount it now seeks. The addendum appears to be consistent with that position, as does the affidavit of Brian Marston, an FSB employee.

On the other hand, the Campbells may argue that Neiderhauser miscalculated the cost of the house or that the original contract was not amended by mutual consent. Although the parties agree on many relevant facts, the "understanding, intention, and consequences of those facts [are] vigorously disputed," *Sandberg v. Klein*, 576 P.2d 1291, 1292 (Utah 1978), necessitating a trial to resolve the factual disputes.

Because we cannot say as a matter of law that a mistake theory was not available to provide relief to Neiderhauser, the trial court erred in granting summary judgment to the Campbells on that basis.

### ACCORD AND SATISFACTION

The Campbells claim that regardless of any disputes or mistakes by one or both parties, the closing constituted an accord and satisfaction. They argue that because Neiderhauser signed the closing statement and accepted the check for the amount stated on the closing statement, Neiderhauser is precluded from recovering the $5,639.33 under any theory.

■ "An accord and satisfaction arises when the parties to a contract mutually agree that a performance different than that required by the original contract will be made in substitution of the performance originally agreed upon and that the substituted agreement calling for a different performance will discharge the obligation created under the original agreement." *Tebbs, Smith & Assocs. v. Brooks*, 735 P.2d 1305, 1307 (Utah 1986); *Bench v. Bechtel, Inc.*, 758 P.2d 460, 461 (Utah App.1988). "Generally the elements of a contract must be present in an accord and satisfaction, including proper subject matter, offer and

**1198** ■

acceptance, competent parties, and consideration." *Bench*, 758 P.2d at 461 (citation omitted). "The party alleging accord and satisfaction has the burden of proving every necessary element." *Id.* The parties must also "clearly intend an accord and satisfaction for it to have effect." *Id.* Such intention may be proven by the parties' conduct or words. *Id.* at 462.

■ Here, as discussed previously, a question of fact exists as to whether the parties agreed to accept performance differing from that originally contracted for. If the trier of fact determines that the closing statement was based upon Neiderhauser's unilateral mistake, there was no accord and satisfaction. When there is a unilateral mistake, and a party accepts less than it is entitled to, the theory of accord and satisfaction will not prevent the mistaken party's recovery of the actual, correct amount. *Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency*, 517 S.W.2d 869 (Tex.Civ.App. 13 Dist.1974); *American Nat'l Ins. Co. v. Gifford–Hill & Co.*, 673 S.W.2d 915 (Tex.App. 5 Dist.1984) (when true amount of debt is not in dispute, relief may be granted for unilateral mistake of creditor in accepting underpayment by debtor). This is so because there is no consideration for the new agreement to accept a lesser amount. *Golden Key Reality, Inc. v. Mantas*, 699 P.2d 730, 733 (Utah 1985) (when one agrees to accept a lesser amount than is due, he or she is not bound by the agreement, because of lack of consideration). If the parties are found to have agreed to a new contract which included payment for all extras without written orders, and were mutually mistaken as to the details of the closing statement, accord and satisfaction is not applicable because the statement does not accurately reflect their intent.

## QUANTUM MERUIT AND BONDING

■ Neiderhauser further claims that the trial court erred in granting summary judgment to the Campbells because the court was without evidence upon which to rule that Neiderhauser's quantum meruit and bonding claims were without merit. Neiderhauser argues, correctly, that these issues were never briefed or argued before the trial court during the summary judgment proceedings. Moreover, the trial court's original order granting summary judgment addresses only the lien and mistake claims. The court later clarified that the order was intended to grant summary judgment on all of Neiderhauser's theories of recovery, but did not enlarge on its rationale.

■ Utah Rule of Civil Procedure 52(a) requires that the court state its grounds for granting a motion for summary judgment when the motion was based on more than one ground. The rule serves to inform the parties and to provide a "ready basis for review on appeal." *Neerings v. Utah State Bar*, 817 P.2d 320, 323 (Utah 1991). Although we here know the grounds on which the trial court granted summary judgment, we are not provided an explication of why all of those grounds were persuasive. Other than the parties' briefs on appeal, we do not know what facts the trial court considered as relevant, nor how, as a matter of law, the theories of quantum meruit or failure to bond were precluded by the trial court. Because we reverse on other grounds, more fully addressed by the trial court, we also reverse and remand on the issues of quantum meruit and failure to bond. *See id.* The parties may then have an opportunity to more fully present those issues to the trial court.

## CONCLUSION

Accordingly, we affirm the trial court's grant of summary judgment on the lien waiver issue. The Campbells are not entitled to summary judgment on the remaining issues on the basis of accord and satisfaction. We reverse and remand the summary judgment on the mistake issue because there are disputed material issues of fact and the Campbells are not entitled to judgment as a matter of law. We also reverse and remand on the quantum meruit and failure to bond issues.

BILLINGS and RUSSON, JJ., concur.